896 So.2d 773 (2004)
ECHEVARRIA, MCCALLA, RAYMER, BARRETT & FRAPPIER, a Florida general partnership; Barrett, Daffin & Frappier, L.L.P., a foreign limited liability partnership; McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C., a Georgia limited liability company engaging in the practice of law; Echevarria & Associates, P.A., a Florida corporation engaged in the practice of law; and Michael Echevarria, individually, Appellants,
v.
Bradley COLE, individually and on behalf of all others similarly situated, Appellee.
Nos. 1D02-4746, 1D02-4982.
District Court of Appeal of Florida, First District.
December 30, 2004.
Rehearing Denied March 21, 2005.
*774 John Beranek of Ausley & McMullen, Tallahassee; Michael J. McGirney and Dale T. Golden of Marshall, Dennehey, Warner, Coleman & Goggin, Tampa, for Appellee.
Vikki R. Shirley, Thomas J. Guilday, Claude R. Walker and Shawn M. Heath of Huey, Guilday, Tucker, Schwartz & Williams, P.A., Tallahassee, for Appellants.
PER CURIAM.
This case is before the court on an appeal and cross-appeal from a class certification order in an action under the Florida Consumer Collection Practices Act, section 559.77, Florida Statutes, and the Florida Deceptive and Unfair Trade Practices Act, section 501.204, Florida Statutes. The appellants contend the motion for class certification was rendered moot by a settlement with the original plaintiffs, and the appellee, who was subsequently added as a party, contends that the class was defined too narrowly. We affirm the trial court's decision to certify a class but we conclude that the class was improperly restricted.
The plaintiffs are property owners who defaulted on their mortgages with their respective lenders. The Echevarria firm, one of the defendants below, was the primary firm retained by the lenders to handle the foreclosure proceedings against the plaintiffs. Echevarria sent reinstatement letters to the plaintiffs at the outset of the foreclosure proceedings, stating that the plaintiffs were in default on their respective mortgages and faced foreclosure unless they reinstated the mortgages by bringing their payments up to date. The letters further claimed that the plaintiffs owed certain costs incurred by the lenders in the course of the proceedings. Kim Nabors and Otis Pye, the original plaintiffs in this action, both had defaulted on their respective mortgages and received reinstatement letters from Echevarria. Neither reinstated their mortgage, and their properties were ultimately foreclosed.
Nabors and Pye filed suit against Echevarria and the other named defendants, alleging that the firm had violated the Florida Consumer Collection Practices Act and the Florida Unfair and Deceptive Trade Practices Act. The essence of the complaint was that the defendants acted unlawfully by asserting a claim for a debt that was in excess of the actual costs their clients incurred during the foreclosure proceedings. Specifically, the plaintiffs argued that the reinstatement letter claimed costs of $325 for title search and examination and various other charges for service of process, when the only cost incurred by the firm was $55 for the title search.
In response, the defendants asserted that the $325 charge was legitimate, as it included $150 for a title search and $175 for a title examination performed by their in-house staff. They further argued that they had not violated either of the statutes referred to in the complaint because their contracts with their lender clients authorized them to charge these amounts.
Nabors and Pye filed a motion for class certification on June 8, 2000. This motion was originally scheduled for a hearing the following November, but it was not resolved until the winter of 2001. Several *775 important events took place in the interim. Two of the defendants, the Echevarria firm and Michael Echevarria, made a formal proposal to pay Nabors and Pye $5,000.00 each, to settle the claims.[1] The proposal was accepted, and shortly thereafter the defendants filed a motion to dismiss the case on the ground that it was moot. On the day this motion was filed, the defendant Barrett made a separate proposal to pay Nabors and Pye $500.00 each to settle the claims. Before Barrett's proposal was accepted and before the trial court ruled on the motion for class certification, the current plaintiff, Bradley Cole, moved to intervene.
Cole had previously received a reinstatement letter from Echevarria regarding the potential foreclosure of his mortgage, and as a result, paid the disputed amounts to reinstate his mortgage. On November 13, 2000, Cole, Nabors and Pye moved for leave to file a third amended complaint to assert Cole's statutory claims.
On December 18, 2000, the trial court issued an order including Cole among the plaintiffs and denying Echevarria's motion to dismiss, explicitly ruling that the settlement offers did not moot the class action. Echevarria then filed a motion for rehearing or clarification. The trial court denied this motion on January 8, 2001, noting that it was permitting the continued maintenance of Nabors and Pye's claims "for purposes of class certification."[2]
Later, Cole, as the putative class representative, filed a motion to certify a class that consisted of "all persons from whom the defendants have filed foreclosure actions and claimed, attempted or threatened to collect costs in the collection of a `consumer debt,' as that term is defined in § 559.55(1) Florida Statutes, which were in excess of the amount allowed or authorized by law" for the four years prior to the filing of the initial complaint through the present. He subsequently filed an amended motion for class certification seeking to define the class as all persons in Florida to whom the defendants sent reinstatement letters or against whom they had filed a foreclosure action as counsel for a lender or mortgagee for the period of July 6, 1994, through June 30, 2001.
The trial court granted the plaintiff's amended motion to certify the class action, and concluded that Cole was an appropriate class representative under rule 1.220, Florida Rules of Civil Procedure. In the certification order, the trial court defined the class as all persons in Florida to whom the Echevarria firms sent reinstatement letters between July 6, 1994, and June 30, 2001, seeking to collect amounts for (1) a title search or examination exceeding the firms' actual out-of-pocket expenses incurred to a third-party vendor; (2) service of process; and (3) fees or costs that had not been incurred at the time the firms sent the reinstatement letter. However, the court limited the class to those persons whose default or failure to timely pay their mortgage obligations did not ultimately result in a foreclosure judgment or sale.
Cole argues on appeal that the trial court defined the class too narrowly by excluding those persons who received a reinstatement letter but who failed to reinstate *776 their mortgage, resulting in a foreclosure judgment or the sale of their respective properties. According to Cole, the exclusion of these potential plaintiffs was error, because an action under the Consumer Collection Practices Act is independent of any action by the creditor to collect on the debt and does not depend on whether the underlying debt is valid, owed, paid or reduced to judgment. Rather, he maintains, the right to bring suit under the Act arises from the debt collector's conduct in collecting the debt, where that conduct violates the Act's proscriptions against unscrupulous debt collection practices.
The trial court appears to have agreed with Cole that the class should include everyone who received a reinstatement letter, regardless of whether they ultimately reinstated the mortgage or obtained a foreclosure judgment. The judge expressly stated in the class certification order,
Whether or not the individual receiving the [reinstatement] letter actually reinstated the mortgage would be immaterial because the act of sending the letter seeking to collect the unlawful charge triggers the violation of the FCCPA. See Keele v. Wexler, 149 F.3d 589, 593 (7th Cir.1998); Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir.1985) (both concerning violations of the Federal Debt Collection Practices Act by law [firms'] transmission of a letter). Similarly, with regard to a violation of the FDUTPA, the prospective class member need not demonstrate that he or she relied upon a misrepresentation because the members of the class have similar interests in curtailing the deceptive activity. Badcock v. Myers [, 696 So.2d 776, 780 (Fla. 1st DCA 1996)]; Latman v. Costa Cruise Lines, Inc.[N.V.], [758 So.2d 699, 703 (Fla. 3d DCA 2000)]. Thus, whether the prospective class member actually reinstated is not pertinent. Rather, the operative event, i.e., the transmission of the reinstatement letter, impacted all prospective members of the class similarly.
It is clear that the trial court agreed with Cole that the violation of the Consumer Collection Practices Act is triggered by the transmission of the reinstatement letter seeking illegitimate costs, not by the ultimate outcome of any foreclosure proceedings. Yet despite this explicit finding, the court nonetheless limited the class to include only those persons "whose default or failure to timely pay their mortgage obligations did not ultimately result in a foreclosure judgment or sale." Given the discussions on the record from the hearing and the court's own statements in the final order regarding the irrelevance of a foreclosure judgment, the inclusion of this qualifier in the class definition appears to have been a misstatement.
We think this restriction on the class was an oversight, but if it was not, we conclude that the order was erroneous as a matter of law because there is no legal justification for limiting the class as the trial court did. As the court noted in its order, a violation of the collection practices statute would have occurred when the reinstatement letter was sent, regardless of the ultimate outcome of the foreclosure proceedings in any given case. Similarly, the class limitation is likewise invalid as to the claim under the trade practices statute.
Echevarria argues that the trial court intentionally excluded those whose failure to pay ultimately resulted in a foreclosure judgment or sale, in an attempt to avoid the judicial immunity rule. Generally, the judicial immunity rule applies to prevent tort actions against an attorney for statements made in the course of a previous litigation. See Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. Unites States Fire Ins. Co., 639 So.2d 606 (Fla.1994). However, the key *777 distinction here is that the judicial immunity rule was created in the context of common law tort actions (generally those inherently involving a falsehood, such as defamation, libel, fraud et cetera). This is how the rule has been consistently applied. See id.; Fridovich v. Fridovich, 598 So.2d 65 (Fla.1992); Wright v. Yurko, 446 So.2d 1162 (Fla. 5th DCA 1984). To the extent that it has been expanded over the years to apply to other types of actions, they have all involved common law causes of action, not statutory ones. See, e.g., Ponzoli & Wassenberg, P.A. v. Zuckerman, 545 So.2d 309, 310 (Fla. 3d DCA 1989) (extortion), review denied, 554 So.2d 1170 (Fla.1989); Sailboat Key, Inc. v. Gardner, 378 So.2d 47 (Fla. 3d DCA 1979) (injurious falsehood). Furthermore, as a separation of powers matter, a judicially created policy such as the judicial immunity rule must not be used to limit the application of a legislatively created, statutory cause of action. See, e.g., Delgado v. JW Courtesy Pontiac GMC-Truck, Inc., 693 So.2d 602, 607-609 (Fla. 2d DCA 1997) (holding that the economic loss rule does not apply to limit the application of the Florida's Deceptive and Unfair Trade Practices Act). Therefore, we conclude that the judicially created judicial immunity rule cannot be applied as a bar to the statutory causes of action in this case.
The defendants contend that the settlements with Nabors and Pye mooted the entire action, and therefore Cole should not have been allowed to intervene in the interim.[3] We reject this argument and hold that a proposal for settlement made while a motion for class certification is pending does not moot a class action. Although the Florida courts have not addressed this specific issue, the federal cases are quite persuasive. See U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 403, 100 S.Ct. 1202, 1212, 63 L.Ed.2d 479 (1980) (holding that a class action could continue regardless of whether one plaintiff's individual claims were moot, because constitutional standing principles "can exist with respect to the class certification issue notwithstanding the fact that the named plaintiff's claim on the merits has expired"); Zeidman v. J. Ray McDermott & Co., Inc., 651 F.2d 1030, 1051 (5th Cir.1981) (concluding that a class action should not be dismissed for mootness upon tender to the named plaintiffs of their personal claims, when a motion for class certification is pending); Susman v. Lincoln Am. Corp., 587 F.2d 866, 870 (7th Cir.1978) (holding that when a motion for class certification is pending, "a case does not become moot merely because of the tender to the named plaintiffs of their individual money damages"). The federal cases on the issue are persuasive, because Florida rule 1.220, which governs certification of a class, is modeled on federal rule 23, which is interpreted in the above federal cases. See also Toledo v. Hillsborough Co. Hosp. Auth., 747 So.2d 958, 960, n. 1 (Fla. 2d DCA 1999); Concerned Class Members v. Sailfish Point, Inc., 704 So.2d 200, 201 (Fla. 4th DCA 1998).
Furthermore, Cole's motion to intervene kept the controversy alive and prevented the case from becoming moot. See Love v. Turlington, 733 F.2d 1562 (11th Cir.1984). A settlement offer made to only one or two potential party plaintiffs cannot moot an entire class action suit, because it does not provide complete relief to the whole class. See Greisz v. Household Bank (Illinois), N.A., 176 F.3d 1012, *778 1015 (7th Cir.1999) (noting that, before a class is certified, "an offer to one [potential party plaintiff] is not an offer of the entire relief sought by the suit ... unless the offer comes before class certification is sought ... and so before the existence of other potential plaintiffs has been announced") (emphasis in original).
In summary, we affirm the trial court's decision to certify a class action with Cole as the representative. However, we reverse and remand for expansion of the class to include all persons in Florida who received a reinstatement letter, regardless of whether they reinstated their mortgages or their properties were foreclosed upon. The language in the class definition limiting the class to those "whose default or failure to timely pay their mortgage obligations did not ultimately result in a foreclosure judgment or sale" shall be deleted from the class definition.
Affirmed in part, reversed in part, and remanded with instructions.
BENTON, PADOVANO and HAWKES, JJ., concur.
NOTES
[1] This amount represented ten times the defendants' maximum possible liability under the FCCPA.
[2] Echevarria sought certiorari review in this court of the order denying its motion to dismiss on mootness grounds. We denied the petition on July 25, 2001. See Echevarria, McCalla, Raymer, Barrett & Frappier v. Nabors, 792 So.2d 452 (Fla. 1st DCA 2001). Echevarria still refused to pay Nabors and Pye under the settlement agreements, and on January 18, 2002, the trial court entered an order acknowledging Echevarria's settlement agreement with Nabors and Pye.
[3] The defendants previously raised the mootness argument in their petition for writ of certiorari to this court in 2001. This Court denied the petition, implicitly rejecting the mootness argument; however, we write at this time to address the argument expressly and to clarify our position on the issue.