950 So.2d 380 (2007)
ECHEVARRIA, McCALLA, RAYMER, BARRETT & FRAPPIER, etc., et al., Petitioners,
v.
Bradley COLE, etc., Respondent.
No. SC05-564.
Supreme Court of Florida.
February 1, 2007.
John Beranek of Ausley and McMullen, Tallahassee, FL, Michael J. McGirney and Dale T. Golden of Marshall, Dennehey, Warner, Coleman and Goggin, Tampa, FL, for Petitioners.
M. Stephen Turner, Kelly Overstreet Johnson, David K. Miller and Jennifer Winegardner of Broad and Cassel, Tallahassee, FL, Thomas J. Guilday, Claude W. Walker and Shawn M. Heath of Huey, Guilday, Tucker, Schwartz and Williams, Tallahassee, FL, for Respondent.
ANSTEAD, J.
Echevarria, McCalla, Raymer, Barrett & Frappier, et al., seek review of the decision of the First District Court of Appeal in Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 896 So.2d 773 (Fla. 1st DCA 2004), on the ground that it expressly and directly conflicts with a decision of the Third District Court of Appeal, Boca Investors Group, Inc. v. Potash, 835 So.2d 273 (Fla. 3d DCA 2002), on a question of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. We limit our review to the question of law upon which jurisdiction was granted, and hold that the litigation privilege applies in all causes of *381 action, statutory as well as common law. Accordingly, we quash the contrary decision of the First District and remand for further proceedings consistent with our holding.

Facts and Procedural History
This case was presented to the district court under the limited circumstances of an interlocutory review of a trial court's order certifying the case for class action status. The First District explained the underlying facts giving rise to this action in its decision below:
The plaintiffs are property owners who defaulted on their mortgages with their respective lenders. The Echevarria firm, one of the defendants below, was the primary firm retained by the lenders to handle the foreclosure proceedings against the plaintiffs. Echevarria sent reinstatement letters to the plaintiffs at the outset of the foreclosure proceedings, stating that the plaintiffs were in default on their respective mortgages and faced foreclosure unless they reinstated the mortgages by bringing their payments up to date. The letters further claimed that the plaintiffs owed certain costs incurred by the lenders in the course of the proceedings. Kim Nabors and Otis Pye, the original plaintiffs in this action, both had defaulted on their respective mortgages and received reinstatement letters from Echevarria. Neither reinstated their mortgage, and their properties were ultimately foreclosed.
Nabors and Pye filed suit against Echevarria and the other named defendants, alleging that the firm had violated the Florida Consumer Collection Practices Act and the Florida Unfair and Deceptive Trade Practices Act. The essence of the complaint was that the defendants acted unlawfully by asserting a claim for a debt that was in excess of the actual costs their clients incurred during the foreclosure proceedings. Specifically, the plaintiffs argued that the reinstatement letter claimed costs of $325 for title search and examination and various other charges for service of process, when the only cost incurred by the firm was $55 for the title search.
In response, the defendants asserted that the $325 charge was legitimate, as it included $150 for a title search and $175 for a title examination performed by their in-house staff. They further argued that they had not violated either of the statutes referred to in the complaint because their contracts with their lender clients authorized them to charge these amounts.
. . . .
Cole had previously received a reinstatement letter from Echevarria regarding the potential foreclosure of his mortgage, and as a result, paid the disputed amounts to reinstate his mortgage. On November 13, 2000, Cole, Nabors and Pye moved for leave to file a third amended complaint to assert Cole's statutory claims.
. . . .
Later, Cole, as the putative class representative, filed a motion to certify a class that consisted of "all persons from whom the defendants have filed foreclosure actions and claimed, attempted or threatened to collect costs in the collection of a `consumer debt,' as that term is defined in 559.55(1), Florida Statutes, which were in excess of the amount allowed or authorized by law" for the four years prior to the filing of the initial complaint through the present. He subsequently filed an amended motion for class certification seeking to define the class as all persons in Florida to whom the defendants sent reinstatement letters or against whom they had filed a *382 foreclosure action as counsel for a lender or mortgagee for the period of July 6, 1994, through June 30, 2001.
The trial court granted the plaintiff's amended motion to certify the class action, and concluded that Cole was an appropriate class representative under rule 1.220, Florida Rules of Civil Procedure. In the certification order, the trial court defined the class as all persons in Florida to whom the Echevarria firms sent reinstatement letters between July 6, 1994, and June 30, 2001, seeking to collect amounts for (1) a title search or examination exceeding the firms' actual out-of-pocket expenses incurred to a third-party vendor; (2) service of process; and (3) fees or costs that had not been incurred at the time the firms sent the reinstatement letter. However, the court limited the class to those persons whose default or failure to timely pay their mortgage obligations did not ultimately result in a foreclosure judgment or sale.
Echevarria, 896 So.2d at 774-75 (footnotes omitted). In appealing the trial court's decision to the First District, Cole argued that the class definition was too narrow because it excluded property owners who received a reinstatement letter but who then failed to reinstate their mortgage, leading to a foreclosure judgment or sale of their properties. Id. at 775-76.
Cole asserted that an action under the Consumer Collection Practices Act does not depend on whether the underlying debt is valid, owed, paid, or reduced to judgment since the right to bring a suit under the Act arises from the debt collector's conduct in collecting the debt and whether the conduct involves unscrupulous debt collection practices. Id. at 776. The trial judge seemingly agreed with Cole that the class should include everyone who received a reinstatement letter; the class certification order stated both that it was irrelevant whether the prospective class member reinstated the mortgage and that the mere transmission of the letter impacted all class members similarly. Id. Nevertheless, despite its explicit finding that "the violation of the Consumer Collection Practices Act is triggered by the transmission of the reinstatement letter seeking illegitimate costs, not by the ultimate outcome of any foreclosure proceedings," the trial court limited the class to include only those whose failure to pay their mortgage obligations did not result in a foreclosure judgment or sale. Id.
In attempting to reconcile the discussions on the record from the trial court's hearing with the trial court's statements in the final order regarding the significance of an actual foreclosure judgment, the First District concluded that the trial court's inclusion of this qualifier in the class definition was a misstatement. Id. The First District further held that, if it was not a misstatement, the trial court's decision to limit the class size in such a manner was plain error under both the trade practices and the collection statutes because there was no legal justification for such a limitation. Id.
Echevarria asserted that the trial court limited the class in an attempt to avoid the implications of a possible litigation privilege bar to those claimants involved in judicial mortgage foreclosure actions. Id. The First District rejected that argument, finding that the litigation privilege did not apply to the instant case because the suit was initiated as a statutory cause of action. Id. at 777. The court below reasoned that the litigation privilege has traditionally been reserved only for common law tort actions such as libel, defamation and fraud. Id. at 776-77. Then, invoking a separation of powers analysis, the court stated that "a judicially created policy such as the judicial *383 immunity rule must not be used to limit the application of a legislatively created, statutory cause of action." Id. at 777. Thus, the First District concluded that "the judicially created judicial immunity rule cannot be applied as a bar to the statutory causes of action in this case." Id.

Litigation Privilege
Echevarria now appeals to this Court, citing conflict with the Third District's decision in Boca Investors as to the application of the litigation privilege in proceedings involving statutory causes of action. Boca Investors initially involved a suit for tortious interference with a business relationship; however, the plaintiffs later moved to amend their original complaint to add a "statutory anti-trust claim." 835 So.2d at 274-75. The trial court dismissed the case and denied the motion to amend, citing this Court's decision in Levin, Middlebrooks, Mabie, Thomas, Mayes Mitchell, P.A. v. United States Fire Insurance Co., 639 So.2d 606 (Fla.1994), for the proposition that absolute immunity is properly afforded to any act occurring during the course of a judicial proceeding. Boca Investors, 835 So.2d at 274. The Third District subsequently upheld the trial court's dismissal, including the rejection of the amendment, finding "such a [statutory] claim is also based on statements covered by the litigation privilege. See Burton [v. Salzberg, 725 So.2d 450, 451 (Fla. 3d DCA 1999)]." Boca Investors, 835 So.2d at 275. Thus, in a case where a statutory antitrust claim was asserted, the Third District explicitly acknowledged that the litigation privilege could be invoked. Because the First District's decision below, holding that the litigation privilege cannot be invoked when a statutory claim is being litigated, is in direct and express conflict with the Third District's holding in Boca Investors, we accepted jurisdiction and now resolve the conflict.[1]

Analysis
In Myers v. Hodges, 53 Fla. 197, 44 So. 357 (1907), this Court recognized the principle of the litigation privilege in Florida, essentially providing legal immunity for actions that occur in judicial proceedings. In that case, involving a libel suit based on statements contained in a complaint, this Court established a qualified litigation privilege, requiring that the alleged defamatory statements be relevant to the judicial proceeding. Id. at 361-2. Under our holding, once this threshold showing was met, the statements were entitled to immunity. Id.
We most recently applied the litigation privilege in Levin. In that case, the Eleventh Circuit certified a question to this Court, asking whether Florida's litigation privilege protects the act of certifying to a trial court an intent to call opposing counsel as a witness at trial in order to obtain counsel's disqualification, and later failing to subpoena and call that person as a witness, from a claim of tortious interference with a business relationship. 639 So.2d at 607. Answering in the affirmative, we extended the litigation privilege to all torts, finding that "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding." Id. at 608. *384 We reasoned that the justification behind immunizing defamatory statements applies equally to "other misconduct occurring during the course of a judicial proceeding." Id. We concluded the opinion by noting that adequate remedies still exist for misconduct in a judicial proceeding, most notably the trial court's contempt power, as well as the disciplinary measures of the state court system and bar association. Id. at 608-09. Notably, our holding was without qualification as to the nature of the judicial proceedings, whether based on common law, statutory authority, or otherwise.[2]
Levin plainly establishes that "[t]he rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding." 639 So.2d at 608 (emphasis supplied). Importantly, the policy reasons for adopting a rule of immunity for actions taken in judicial proceedings focus on the judicial nature of the proceedings, not whether they were initiated under common law or statute. It is the perceived necessity for candid and unrestrained communications in those proceedings, free of the threat of legal actions predicated upon those communications, that is at the heart of the rule. The nature of the underlying dispute simply does not matter. Hence, the rationale upon which we relied in extending the litigation immunity privilege to all tortious causes of action likewise applies to a statutory cause of action: "Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct." Id.
We see no reason why this rationale would be limited by whether the misconduct constitutes a common-law tort or a statutory violation. The litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin. "Absolute immunity must be afforded to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding." Id.

Conclusion
Given the precedent established by Levin, we hold that the litigation privilege applies in all causes of action, whether for common-law torts or statutory violations. Accordingly, we approve the decision in Boca Investors, quash the decision of the First District herein, and remand for further proceedings consistent herewith.
It is so ordered.
LEWIS, C.J., and PARIENTE, QUINCE, and CANTERO, JJ., concur.
*385 PARIENTE, J., concurs with an opinion, in which CANTERO, J., concurs.
WELLS, J., concurs in part and dissents in part with an opinion.
BELL, J., concurs in part and dissents in part.
PARIENTE, J., concurring.
I agree with the majority's resolution of the conflict issue. I also agree with the majority's decision not to address the other issues raised by the parties, including whether the litigation privilege covers the reinstatement letters at issue in this case. However, as Justice Wells notes, this is a threshold issue that requires a determination of whether the letters were sent "in the due course of [a] judicial proceedings or as necessarily preliminarily thereto." Concurring in part, dissenting in part opinion at 385 (quoting Ange v. State, 98 Fla. 538, 123 So. 916, 917 (1929)). Although the First District stated that "Echevarria sent reinstatement letters to the plaintiffs at the outset of the foreclosure proceedings," Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 896 So.2d 773, 774 (Fla. 1st DCA 2004), the First District did not address whether the letters were, in fact, sent "in the due course of" or as "necessarily preliminarily" to the foreclosure action. Rather, the First District ruled that the litigation privilege did not apply because the lawsuit was initiated as a statutory cause of action. See id. at 777. Now that this Court has held that the privilege is applicable in litigation based on both common law and statutory causes of action, the First District should consider on remand whether the privilege covers the reinstatement letters sent in this case.
CANTERO, J., concurs.
WELLS, J., concurring in part and dissenting in part.
The majority opinion resolves the conflict regarding whether Florida's litigation privilege may be applied as a bar to statutory causes of action by approving the Third District Court of Appeal's decision in Boca Investors Group, Inc. v. Potash, 835 So.2d 273 (Fla. 3d DCA 2002), and quashing the First District Court of Appeal's decision in Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 896 So.2d 773 (Fla. 1st DCA 2004). However, the majority does not answer the more fundamental question of whether the litigation privilege extends to cover the reinstatement letters at issue in Echevarria. If the litigation privilege does not cover these letters, it is immaterial whether the plaintiffs' cause of action is derived from statute or common law. I write separately to clarify that in my view, Florida's litigation privilege does not extend to the reinstatement letters. It would be a waste of judicial resources to not answer this question while Echevarria is before the Court.
In Ange v. State, 98 Fla. 538, 123 So. 916 (1929), the Court explained that the litigation privilege "extends to the protection of the judge, parties, counsel, and witnesses, and arises immediately upon the doing of any act required or permitted by law in the due course of the judicial proceedings or as necessarily preliminary thereto." Ange, 123 So. at 917.[3] In Levin, Middlebrooks, *386 Mabie, Thomas, Mayes & Mitchell, P.A., v. United States Fire Insurance Co., 639 So.2d 606, 608 (Fla.1994), the Court reiterated that the litigation privilege "must be afforded to any act occurring during the course of a judicial proceeding."
In the instant case, the majority rightfully declines to address at what point "a judicial proceeding" begins for purposes of the litigation privilege because it is unnecessary to do so given the facts of this case. Majority op. at 383 n. 1. The reinstatement letters sent by Echevarria were not a required condition precedent to foreclosure proceedings and were not related to the prosecution or defense of a foreclosure suit. Thus, the reinstatement letters are not covered by the litigation privilege.
Florida courts have previously addressed what statements are "necessarily preliminary" to judicial proceedings. The Fourth District Court of Appeal helpfully explained that publications necessarily preliminary to judicial proceedings include presuit communications that are required by statute or by contract as a condition precedent to suit. Pledger v. Burnup & Sims, Inc., 432 So.2d 1323, 1326 (Fla. 4th DCA 1983). More recently, this Court considered whether voluntary statements made prior to the instigation of criminal charges should be protected by the litigation privilege. See Fridovich, 598 So.2d at 66. The Court held that while statements compelled by investigatory subpoena are absolutely privileged, voluntary statements to police are only qualifiedly privileged. The Court also noted that voluntary statements to private individuals are not privileged at all. Fridovich, 598 So.2d at 69 & nn. 7-8.
The reinstatement letters at issue were not a statutory or contractual prerequisite to foreclosure. As noted in Pledger, Florida law requires a plaintiff to send notice before filing a complaint in certain types of actions. For example, section 766.106, Florida Statutes (2006), requires a medical malpractice claimant to notify each prospective defendant by mail prior to filing a complaint. Medical malpractice litigation arguably "begins" when this notification is sent.
Here, no statute or contract provision required Echevarria to send borrowers reinstatement information in order to proceed with foreclosure. The First District stated:
Echevarria sent reinstatement letters to the plaintiffs at the outset of the foreclosure proceedings, stating that the plaintiffs were in default on their respective mortgages and faced foreclosure unless they reinstated the mortgages by bringing their payments up to date.
Echevarria, 896 So.2d at 774. This statement should not be read to mean that the reinstatement letters were sent "in the due course of" foreclosure litigation or "necessarily preliminary" to it. Such a reading is not supported by the record. In actuality, the reinstatement letters did not refer to foreclosure proceedings.[4] Mr. Echevarria testified that reinstatement letters were not sent to every borrower facing foreclosure. Rather, the letters containing the allegedly unlawful claim were sent in response to borrower requests for information regarding the possibility of reinstating the mortgage.
*387 In terms we used in Ange, the reinstatement letters were not statements "required or permitted by law in the due course of the judicial proceedings," nor were the letters sent because they were legally necessary in order to prosecute foreclosures. The letters were relevant only to reinstatement of the mortgages. The letters did not become part of a judicial proceeding simply because they were sent by a law firm. If the letters contained statements which were in violation of the law, it should make no difference whether the letters were sent by the bank or the bank's lawyers. The litigation privilege as this Court has defined it would not insulate either the bank or the bank's lawyers from liability for the unlawful statements.
The policy reasoning underlying the litigation privilege indicates that the privilege was not intended to preclude actions based on any misrepresentations contained in these reinstatement letters. In Levin, the Court explained that Florida's litigation privilege "resulted from the balancing of two competing interests: the right of an individual to enjoy a reputation unimpaired by defamatory attacks versus the right of the public interest to a free and full disclosure of facts in the conduct of judicial proceedings." Levin, 639 So.2d at 608. The Court held that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding because:
Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.
Id. The Court designed the privilege to ensure litigants' freedom of advocacy without leaving victims of tortious conduct without remedy by restricting the litigation privilege to acts occurring during the course of judicial proceedings. Victims of torts committed during judicial proceedings are protected by the trial judge's contempt power and the Court's authority to discipline members of The Florida Bar. Id.
But when communications are separate from pending litigation and are not necessary in order to pursue future litigation, tort victims do not have the benefit of these judicial safeguards. Therefore, the litigation privilege should not be structured so as to deprive those who are intended to have the protection of law in respect to the communications from having that protection. Recipients of misleading or fraudulent reinstatement letters must be able to enforce Florida's Consumer Collection Practices Act (FCCPA) and Deceptive and Unfair Trade Practices Act (FDUTPA), the statutory bases of the causes of action pleaded in Echevarria, for relief. To not allow such enforcement would be an unintended and unstated consequence of the litigation privilege.
In short, the reinstatement letters currently at issue were nonadversarial communications between private individuals. As noted above, this Court has emphasized that the litigation privilege does not apply to voluntary presuit statements made by private individuals to private individuals. See Fridovich, 598 So.2d at 69 n. 8. Thus, the litigation privilege does not bar a civil suit based on these letters, regardless of whether that suit is statutory or common law in nature.
NOTES
[1] The parties have raised numerous other issues both in the briefs and at oral argument which go well beyond the conflict issue, including, for example, an issue as to the point at which the litigation privilege may first be asserted. As we emphasized in our jurisdictional order, we granted jurisdiction in this case to consider only the conflicting holdings on the application of the litigation privilege.
[2] In addition to numerous traditional defamation claims, courts in Florida have applied Levin to uphold the use of the privilege in such diverse actions as civil conspiracy and tortious conduct in interfering with custody and visitation rights. See Van Horn v. McNabb, 715 So.2d 380, 381 (Fla. 4th DCA 1998) ("It is clear, from the face of the complaint, that Van Horn enjoys absolute immunity from any alleged defamation or other tortious act done in the course of the prior judicial proceeding."); Rushing v. Bosse, 652 So.2d 869, 875-76 (Fla. 4th DCA 1995) (affirming a dismissal for a count of civil conspiracy, citing to Levin and holding that "absolute immunity would be afforded to any conduct occurring during the course of the adoption proceeding, regardless of whether the conduct involved a defamatory statement or other tortious behavior, including a violation of rule 2.060(d) because signing the petition for adoption . . . has some relation to the adoption proceeding").
[3] In Fridovich v. Fridovich, 598 So.2d 65, 69 (Fla.1992), the Court receded in part from Ange, explaining:

We thus hold, as a majority of the other states have held in this context, that defamatory statements voluntarily made by private individuals to the police or the state's attorney prior to the institution of criminal charges are presumptively qualifiedly privileged. We therefore recede from Ange and Robertson [v. Industrial Insurance Company, 75 So.2d 198 (Fla.1954),] to the extent they are inconsistent with our ruling today.
(Footnotes omitted.) However, importantly, the Court reaffirmed Ange's crucial holding that the litigation privilege arises upon the doing of any act necessarily preliminary to a judicial proceeding. Id. at 66.
[4] Echevarria's letter to class representative Cole never uses the word "foreclosure," except that it is signed by "Haelee Holjes Foreclosure Paralegal."