965 So.2d 1228 (2007)
Bradley COLE, individually and on behalf of all others similarly situated, Appellant,
v.
ECHEVARRIA, McCALLA, RAYMER, BARRETT & FRAPPIER, a Florida general partnership; Barrett, Daffin & Frappier, L.L.P., a foreign limited liability partnership; McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C., a Georgia limited liability company engaging in the practice of law; Echevarria & Associates, P.A., a Florida corporation engaged in the practice of law; and Michael Echevarria, individually, Appellees.
Nos. 1D02-4746, 1D02-4982.
District Court of Appeal of Florida, First District.
September 28, 2007.
*1229 Thomas J. Guilday, Claude R. Walker and Shawn M. Heath of Huey, Guilday, Tucker, Schwartz & Williams, P.A., Tallahassee; M. Stephen Turner, Kelly Overstreet Johnson, David K. Miller, and Robert Witmeyer of Broad and Cassel, Tallahassee, for Appellant.
John Beranek of Ausley & McMullen, Tallahassee; Michael J. McGirney of Marshall, Dennehey, Warner, Coleman & Goggin, Tampa, for Appellees.

ON REMAND
PADOVANO, J.
This is an appeal from a class certification order in an action alleging violations of the Florida Consumer Collection Practices Act and the Florida Deceptive and Unfair Trade Practices Act. The plaintiffs *1230 are property owners who were in default on their mortgages, and the defendants are attorneys representing the mortgage holders. The essence of the complaint is that the defendants engaged in an illegal collection practice and a deceptive trade practice by requiring the plaintiffs to pay inflated costs for title searches and title examinations in order to reinstate their mortgages.
The trial court granted the plaintiffs' motion for class certification but limited the class to those landowners who had paid the disputed fees and reinstated their mortgages. The prospective plaintiffs who failed to pay the disputed fees and lost their property in foreclosure were excluded from the class. On appeal, this court affirmed the decision to certify a class but held that the trial court erred in limiting the class to those who had reinstated their mortgages. See Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 896 So.2d 773 (Fla. 1st DCA 2004). As explained in the opinion, there was no reasonable basis for excluding the plaintiffs who had lost their property in foreclosure while including those who had not.
In the course of the appeal, the defendants speculated that the trial court's decision to limit the class may have been based on the litigation privilege. According to the defendants, the privilege would apply to those who received the reinstatement letters and eventually lost their property in foreclosure actions, but not to those who paid the disputed charges, thereby avoiding foreclosure. If this were correct, there might have been some plausible reason to define the class as the trial court did.
However, we concluded that the litigation privilege could not be applied to any of the plaintiffs and, for that reason, rejected the defendants' argument that the class was properly limited. We noted that the privilege had been applied to common law actions such as defamation, but we then stated incorrectly that it could not even apply to statutory claims.
On discretionary review, the Florida Supreme Court held that the litigation privilege is not limited to common law causes of action, but that it also applies to statutory causes of action. See Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So.2d 380 (Fla.2007). Based on this holding, the supreme court quashed the decision of this court and remanded the case for further proceedings. The majority opinion rejected the general statement in our opinion that the litigation privilege does not apply to statutory actions but left open the question whether the privilege can be applied under the circumstances presented here. In a concurring opinion, Justice Pariente stated that "the First District should consider on remand whether the privilege covers the reinstatement letters sent in this case." Id. at 385.
To respond to this request, we set out to determine whether the issue was ripe for appellate review in the proceeding now before the court. Although the possible implications of the litigation privilege may be relevant to the trial court's decision to limit the class to certain plaintiffs, it was not apparent to us that the applicability of the privilege is a matter that is properly before the court. The defendants interjected this issue as a possible explanation for the trial court's decision to restrict the class, but it was merely an argument. However, the issue was not addressed or even mentioned in the class certification order that is the subject of the present appeal. And we did not know whether it had been addressed before in some other proceeding before the trial court. In retrospect, it is apparent that this court should not have addressed the issue at all. There was no need to refute a speculative argument.
*1231 In an effort to determine whether we could answer the question regarding the applicability of the litigation privilege, this court requested a clarification of the trial court's order. One of the questions asked of the trial judge was whether he had previously ruled on the applicability of the litigation privilege in this case. The trial judge answered the question directly:
In denying the defendant's motion for summary judgment, this Court necessarily ruled that the litigation privilege was no basis for dismissal. This court's decision was predicated on the fact that the false representations made by the defendant were not made in the course of a judicial proceeding. This court necessarily considered the application of the litigation privilege but determined that it had no application in the instant case because the false representations were not made in the course of a judicial proceeding.
With this explanation, it is now clear that Justice Pariente's question regarding the applicability of the litigation privilege has been answered in a ruling by the trial court, but that the ruling is not presently before this court on review.
This brings us back to the task of reviewing the class certification order that is the subject of the appeal. We approach the matter again in light of the applicable standard of review. An order certifying a class is reviewed on the merits for an abuse of discretion. See Turner Greenberg Assocs., Inc. v. Pathman, 885 So.2d 1004 (Fla. 4th DCA 2004); Seminole County v. Tivoli Orlando Assocs. Ltd., 920 So.2d 818 (Fla. 5th DCA 2006). It follows from this general principle that an order determining the composition of a class is also reviewed on the merits by the abuse of discretion standard. By this standard, we affirm the trial court's decision to certify a class but reverse the certification order to the extent that it limits the class to those plaintiffs who had reinstated their mortgages.
The supreme court has now corrected the misstatement this court made in rejecting the defendants' suggestion that the class may have been limited on account of the litigation privilege. However, we do not perceive that the supreme court disagreed with the primary basis for our decision: that there was no valid reason to distinguish between landowners who received the reinstatement letters and paid the allegedly inflated charges, and those who received the reinstatement letters and lost their property in foreclosure because they could not pay. Nor are we persuaded to make such a distinction by the arguments in the briefs submitted by the parties on remand. The causes of action for unfair debt collection and unfair trade practices are based on the act of making an unlawful demand in the reinstatement letter, not the ultimate consequence of the letter.
The class certification order does not state a reason for limiting the class to those who reinstated their mortgages. To the contrary, the findings in the order support the view that the class should not be limited in that way. As the trial judge explained,
Whether or not the individual receiving the [reinstatement] letter actually reinstated the mortgage would be immaterial because the act of sending the letter seeking to collect the unlawful charge triggers the violation of the FCCPA. See Keele v. Wexler, 149 F.3d 589, 593 (7th Cir.1998); Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir.1985) (both concerning violations of the Federal Debt Collection Practices Act by law [firms'] transmission of a letter). Similarly, with regard to a violation of the FDUTPA, the prospective class member *1232 need not demonstrate that he or she relied upon a misrepresentation because the members of the class have similar interests in curtailing the deceptive activity. Badcock v. Myers, 696 So.2d 776, 780 (Fla. 1st DCA 1996); Latman v. Costa Cruise Lines, Inc., 758 So.2d 699, 703 (Fla. 3d DCA 2000). Thus, whether the prospective class member actually reinstated is not pertinent. Rather, the operative event, i.e., the transmission of the reinstatement letter, impacted all prospective members of the class similarly.
The trial court agreed with the plaintiffs that the statutory causes of action were triggered by the transmission of the reinstatement letter seeking illegitimate costs, not by the ultimate outcome of any foreclosure proceedings. Yet, despite this explicit finding, the trial court nonetheless limited the class to include only those persons "whose default or failure to timely pay their mortgage obligations did not ultimately result in a foreclosure judgment or sale."
We have considered the possibility that the distinction the trial court made might have been based on the fact that those who lost their property in foreclosure would have a different kind of injury from those who did not. That notion is dispelled by the findings in the certification order. The order states that "[i]ndividual issues of reliance and damages do not predominate," because the remedy in all cases is limited to the damages set by statute. This statement is consistent with the trial court's observation in an earlier part of the order that the case focuses on the actions by the defendants, not on individual differences between the prospective class members.
For these reasons, we affirm the trial court's decision to certify the class but reverse the part of the order that limits the class to those who reinstated their mortgages. The class should include all persons who received the reinstatement letter that is alleged to violate the state laws at issue, whether they reinstated their mortgage in response to the letter or lost their property in foreclosure.
Affirmed in part, reversed in part, and remanded.
HAWKES, J., concurs.
BENTON, J., concurs with opinion.
BENTON, J., concurring.
As Judge Padovano explains, after remand from the supreme court in the wake of its decision in Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So.2d 380 (Fla.2007), we asked the learned trial judge what role, if any, the litigation privilege had played in the analysis that led to class certification. The trial judge responded in part, as follows:
2. Did the issue regarding the litigation privilege play any part in the trial court's decision to limit the class?
Yes. In considering the issue of commonality, including distinctions which could be asserted in defense of the claim alleged, and in considering the issue of damages recoverable by the various members of the class sought to be certified, this Court considered the issue regarding the defendants' reliance upon the litigation privilege. The determination of the class was not predicated upon a decision that the litigation privilege applied to class members against whom a judgment of foreclosure was entered. The limitation on the class was based upon this Court's determination that different issues confronted those plaintiffs whose land was lost in foreclosure, as opposed to those plaintiffs who saved their land by virtue of actually paying *1233 the fraudulent claims. This Court did not limit the class because the litigation privileges applied to those plaintiffs who lost their property to foreclosure.
3. Was the decision to limit the class an oversight on the part of the trial court or was it intentional?
The decision to limit the class was not an oversight on the part of this Court. It was an intentional decision, made for the reasons specified in this order of clarification, which had nothing to do with the distinction between a statutory violation and a common-law tort claim.
In the circumstances, I fully agree with my colleagues that the supreme court's remand requires no different result at this juncture. But I write to suggest that it is still open to the parties to seek certification of subclasses in the trial court, if they or either of them deems it appropriate.