# Third District Court of Appeal

**State of Florida**

Opinion filed August 1, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-2370
Lower Tribunal No. 17-18397
_____

**Brandy E. Raulerson,**
Appellant,

vs.

**Jose P. Font,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Luise Krieger Martin, Judge.

Barnard Law Offices, and Andrew C. Barnard and Garrett William Haakon Clifford, for appellant.

Font & Nelson, and Jose P. Font and Frantz C. Nelson (Fort Lauderdale), for appellee.

Before SUAREZ, SALTER and FERNANDEZ, JJ.

SALTER, J.

Florida-licensed attorney Brandy E. Raulerson ("Ms. Raulerson") appeals an order dismissing her petition for an injunction against stalking as against the appellee, Florida-licensed attorney Jose P. Font ("Mr. Font"). We affirm the order, concluding, as the trial court did, that the sworn allegations in the petition (a) primarily involve conduct outside the definitions and boundaries of the applicable statutes,[1] and (b) present certain issues best addressed under the disciplinary framework established by the Rules Regulating The Florida Bar.

I.  Background

Ms. Raulerson is an associate attorney employed by a law firm (Barnard Law Offices, L.P., "BLO"), which regularly represents insured homeowners and other parties with insurance claims, including bad faith claims. The senior and "name" partner at BLO is Andrew C. Barnard ("Mr. Barnard"). Mr. Barnard was designated as Ms. Raulerson's attorney for purposes of the stalking case, and he also represents her in this appeal. The petition includes allegations regarding conduct witnessed by Mr. Barnard and statements heard by him, in each case relating to lawsuits and conduct in a courtroom or courthouse.

The respondent, Mr. Font, is identified in the petition as the managing partner of a law firm, "Font & Nelson, LLC," in Fort Lauderdale. Mr. Font's law

_____

[1] Sections 784.048 ("Stalking; definitions; penalties.") and 748.0485 ("Stalking; injunction; powers and duties of court and clerk; petition; notice and hearing; temporary injunction; issuance of injunction; statewide verification system; enforcement."), Florida Statutes (2017).

2

firm regularly represents insurers, and Mr. Font has expressed a particular interest in identifying fraudulent insurance claims for prosecution under the applicable criminal statutes. The petition alleges that Mr. Font, among other wrongful acts: "threatened, harassed, stalked, cyberstalked, or abused" Ms. Raulerson; "threatened to harm [Ms. Raulerson] and individuals closely associated with [Ms. Raulerson];" "repeatedly harassed and threatened [Ms. Raulerson] and her co workers and her employer by forcing her to appear at court hearings having nothing to do with her, and then threatening her with criminal actions, going so far as to publish a false affidavit against her which he suborned from a prior client;" and repeatedly published the affidavit "in all cases involving [BLO] as well as other cases where [BLO] has no involvement whatsoever."

As the eleven-page petition continues, the underlying details (dates, times, locations, specific threats – verbal, nonverbal, or implied) are sparse, but include these allegations:

- Mr. Font is alleged to have made "verbal threats to [Ms. Raulerson] that he will cause her to lose her bar license and livelihood and reputation."

- Mr. Font is alleged to have harassed Ms. Raulerson because of her "rejection of his crude sexual advances." This was alleged to have begun in January 2016, the first encounter between the two attorneys, at an examination under oath of an insured conducted by Mr. Font and attended by Ms. Raulerson

3

and another attorney from BLO. Mr. Font allegedly asked the other BLO attorney, within the hearing of Ms. Raulerson, if he was having sexual relations with Ms. Raulerson. The petition alleges that this was done "with the obvious intent or objective that Mr. Font himself wanted to [have sexual relations with her]."[2]

- Following this incident, Ms. Raulerson was upset and complained to BLO and Mr. Barnard. Mr. Barnard "contacted Mr. Font and expressed his concern to Mr. Font about such abuse from an attorney against a young associate. Mr. Font told Mr. Barnard to 'f**k off.'"

- At some later time, Mr. Font allegedly told Ms. Raulerson "he was having her watched by means of remote drones."

- These circumstances caused Ms. Raulerson "extreme mental anguish resulting in physical illness (hives, vomiting, lost sleep, loss of enjoyment of life, disparagement of reputation)." Mr. Font's threats have caused Ms. Raulerson's level of discomfort to rise "from high anxiety to revulsion against Mr. Font to the point where she has applied for and obtained a concealed weapons license."

Over ninety percent of the allegations in the petition, however, are related to unprofessional conduct in litigation by Mr. Font—issuing subpoenae to require

---

[2] The petition described the obscene terms allegedly spoken rather than "sexual relations."

Ms. Raulerson to appear at insurance case trials, even when she was not involved; filing an allegedly-defamatory affidavit[3] in over a dozen insurance cases; becoming "unhinged" after BLO "obtained a money judgment against him individually for $8,332.50 for discovery abuses" in May 2017; making threats while "hiding behind 'judicial privilege;'" wasting Ms. Raulerson's time in an effort to have her fired, "obviously for 'revenge' and to make the case as expensive as possible for [the plaintiff in a given case]."

The injunction for protection sought in the petition asked that Mr. Font be prohibited from "going to or within 500 feet of any place [Ms. Raulerson] lives, or to any specified place regularly frequented by [her] and any named family members or individuals closely associated with [her.]" Those individual co-workers closely associated with Ms. Raulerson were alleged to include Mr. Barnard, any member of his family, or any associates or employees of BLO.

The petition also sought injunction provisions prohibiting Mr. Font from going to or within 500 feet of the BLO law office, going to or within 100 feet of Ms. Raulerson's motor vehicle "whether or not that vehicle is occupied," and contacting Ms. Raulerson by telephone, mail, email, in writing, through another person, "or in any other manner."

---

[3] The affidavit was signed by a former client of BLO and alleged "staging insurance claims and fee splitting with non-lawyers" in an insurance case in which Mr. Font represented the insurer. BLO denies that these allegations have any basis in fact.

In keeping with the statutory procedure in section 784.0485, a temporary injunction for protection against stalking violence was issued on the day the petition was filed, and the matter was scheduled for an evidentiary hearing and consideration of a final judgment of injunction some fifteen days later. Mr. Font filed a 422-page motion to dismiss the petition and dissolve the injunction, raising the applicability of the litigation privilege, the paucity of details in the allegations, the petition's reliance on "psychoanalytical analysis" and "theatrical representation of facts," and an argument that emailed and electronically-filed pleadings and communications between attorneys in legal matters may not be relied upon as predicates for "cyberstalking" or "harassment" for purposes of the stalking statutes.

The attachments included in the motion to dismiss included a deposition transcript in which Mr. Font and Ms. Raulerson chastised one another for allegedly-improper questions or objections. Included as well were motions to disqualify BLO, objections, and motions for sanctions in various County Court insurance cases in which the parties were represented by BLO and Mr. Font's firm.

On behalf of Ms. Raulerson, Mr. Barnard filed a 174-page opposition to the motion to dismiss, addressing Mr. Font's claim of litigation privilege and the subpoenae duces tecum directed to Ms. Raulerson. The opposition contended that Mr. Font's claims and motion for disqualification against Ms. Raulerson and BLO

6

were dismissed with prejudice in August 2017, and that a Bar complaint was pending against Mr. Font.

The trial judge conducted a lengthy, thorough, and patient hearing on the motion to dismiss. The court granted the motion to dismiss, "not necessarily with pleasure," but "because I think that's what I need to do under the law." The court's comments in open court included these observations for the benefit of Ms. Raulerson:

> As a young female attorney, you deserve better, because in making this ruling I'm assuming that—and presuming that everything that has been said is 100 percent true. I want you to know that. That's what the law requires me to do to make—to make this determination. I find that if those things were said to you, then you were the victim of bullying at the very least. We are all supposed to be adults. We are all supposed to be examples for the community. We are all supposed to behave as officers of the court.

The trial court also provided the parties and counsel with information regarding the Miami-Dade Circuit Professionalism Committee. This appeal followed.

II.    Analysis

Although the order of dismissal was without prejudice, we have jurisdiction under Florida Rule of Appellate Procedure 9.130(a)(3)(B) (addressing non-final orders denying an injunction). The trial court correctly noted that the motion to dismiss tests the legal sufficiency of the petition, a matter for de novo review in this Court: "We assume that all allegations in the complaint are true, and we

7

construe all reasonable inferences from those allegations in favor of [plaintiff]." Greene v. Times Publ'g Co., 130 So. 3d 724, 728 (Fla. 3d DCA 2013).[4]

A.   Key Terms

Section 784.048(1) provides the pertinent definitions for "harass," "course of conduct," "credible threat," and "cyberstalk." The statute defines the first degree misdemeanor offense of "stalking"[5] and the third degree felony offense of "aggravated stalking."[6] These are the definitions and offenses which establish the predicate requirements for an injunction for protection against stalking or cyberstalking. The procedure for prosecuting a cause of action for such an injunction is detailed in section 784.0485.

The following excerpts from the definitions in section 748.048(1) are applicable in the present case (with emphasis provided):

---

[4]  Mr. Font contends that, because the order sought to be reviewed also dissolved the previously entered temporary injunction, that our standard of review should be for an abuse of discretion, citing Shaw v. Tampa Electric Co., 949 So. 2d 1066, 1068 (Fla. 2d DCA 2007). We disagree, as the ex parte temporary injunction in stalking cases is effective for a short and limited period of time, pending consideration at a hearing after notice to the respondent. The trial court's dismissal of the petition upon consideration of Mr. Font's motion to dismiss presents an issue of law subject to de novo review.

[5]  § 784.048(2).

[6]  § 784.048(3). Aggravated stalking occurs when stalking includes an additional element, "a credible threat." Id.

8

"'**Harass**' means to engage in a course of conduct directed at a specific person which causes **substantial emotional distress** to that person and serves **no legitimate purpose**." § 784.048(1)(a). The enactors' choice of the term "substantial emotional distress" establishes a more demanding burden than the dictionary definitions of the word "harass" might suggest, which include the verbs "worry," "tire out," "vex, trouble, or annoy continually or chronically," "plague," "bedevil," or "badger."[7]

"'**Course of conduct**' means a pattern of conduct composed of a series of acts over a period of time, however short, which evidences a continuity of purpose." § 784.048(1)(b).

"'**Credible threat**' means a verbal or nonverbal threat, or a combination of the two, including threats delivered by electronic communication or implied by a pattern of conduct, which places the person who is the target of the threat in **reasonable fear** for his or her safety or the safety of his or her family members or individuals closely associated with the person, and which is made with the apparent ability to carry out the threat to cause such harm. It is not necessary to prove that the person making the threat had the intent to actually carry out the threat." § 784.048(1)(c).

---

[7] Webster's Third New Int'l Dictionary, Unabridged 1031 (1986).

"'**Cyberstalk**' means to engage in a course of conduct to communicate, or to cause to be communicated, words, images, or language by or through the use of electronic mail or electronic communication, directed at a specific person, causing **substantial emotional distress** to that person and serving **no legitimate purpose**." § 784.048(1)(d).

The term "substantial emotional distress" is evaluated under a reasonable person standard rather than a subjective standard. Richards v. Gonzalez, 178 So. 3d 451, 453 (Fla. 3d DCA 2015).

B.     Application of the Statutory Terms to the Petition

As the trial court cogently noted at the outset, the petition more nearly resembles, in its overall impression, a grievance complaint to The Florida Bar, or a motion for sanctions in the ten enumerated insurance lawsuits (and one petition to this Court) involving the parties, rather than other petitions for injunction under Chapter 784 ("I don't think that this is the forum for me to decide, frankly, a lot of what you would like me to decide based on your pleadings").

It must also be noted that the petition is misleading (whether intentionally or not) in its use of the term "order of protection" in paragraph 4.d. of the petition regarding "previous protection." Section 784.0485(3)(d) requires that the petition include, if applicable, information pertaining to any other "order of protection issued against [the respondent] previously or from another jurisdiction, if known."

10

In context, "order of protection" plainly refers to an injunction for protection against stalking.[8]  As used in the petition by Ms. Raulerson's counsel, however, "order of protection" was used to describe a protective order issued under the Florida Rules of Civil Procedure to quash a subpoena issued by Mr. Font's law firm to compel her attendance at a trial in which Ms. Raulerson had no apparent role or knowledge.  Ms. Raulerson's counsel classifies such acts as a form of harassment, but it is misleading to characterize the protective order obtained under the civil rules as an "order of protection" under the "previous protection" allegations required by the stalking statutes.

The core allegations in the petition describe interactions between Ms. Raulerson in her capacity as an attorney for the BLO firm and Mr. Font in his capacity as an attorney, all occurring in connection with the ten, enumerated, insurance-related lawsuits.  Mr. Font's verbal threats to Ms. Raulerson "that he will cause her to lose her bar license and livelihood and reputation," and his repeatedly filing the affidavit of a former BLO client (as purported evidence of insurance fraud by that client and BLO) could involve unprofessional behavior or

---

[8]  As used in section 784.0485, "the offense of stalking shall include the offense of cyberstalking."  § 784.0485(1).  The misleading characterization in paragraph 4.d is not rectified by the statement in paragraph 1 of the petition that Ms. Raulerson had not previously "received or tried to get an injunction for protection against stalking against [Mr. Font]."

even conduct subject to discipline by The Florida Bar, but falls short of harassment under the statutory definition.

The unsuitability of the stalking statutes for complaints about the repeated electronic service of subpoenae, even frivolous subpoenae, by one lawyer on another is apparent and was properly recognized by the trial court. Such conduct, as alleged in the present case and if proven, may be many things, but it is not "cyberstalking" under section 784.048(1)(d).

The petition acknowledges that much of the alleged conduct involves violations of Rules Regulating The Florida Bar 4-3.1 proscribing frivolous actions, 4-3.2 regarding dilatory practices by a lawyer in litigation, and 4-3.4(d) proscribing frivolous discovery requests. Culling from these allegations the remaining wrongful acts that might be actionable under the stalking statutes, we are left with grossly inappropriate sexual comments; undated "inappropriate suggestions such as 'you can call me on my cell phone at night to discuss this case';" and a statement by Mr. Font to Ms. Raulerson that "he was having her watched by means of a remote drones [sic]," with no information regarding the date or actual observation by any drone.

Typical hallmarks of stalking and cyberstalking simply are not present, whether involving actual or implied threats of violence; surveillance; videotaping; the use of social media for revenge or humiliation; cellphone bugging or GPS

tracking; harassment by telephone or personal visits (here, outside of alleged interactions in legal proceedings); and other behaviors enumerated in section 7, "A Reference to Electronic Stalking in Florida," within the Florida's Domestic Violence Benchbook (Sept. 2014) compiled for judges by the Office of State Courts Administrator.[9]

### C. Litigation Privilege

In his motion to dismiss and answer brief here, Mr. Font contends that the allegations and relief sought within the petition are barred by the litigation privilege. As a matter of law, "defamatory statements made in the course of judicial proceedings are absolutely privileged, no matter how false or malicious the statements may be, so long as the statements are relevant to the subject of inquiry." Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So. 2d 606, 607 (Fla. 1994). The scope of that privilege was narrowed slightly in DelMonico v. Traynor, 116 So. 3d 1205, 1208 (Fla. 2013), to exclude allegedly defamatory statements "made by an attorney during ex-parte, out-of-court questioning of a potential, nonparty witness while investigating matters connected to a pending lawsuit."

---

[9] Thanks to the pioneering work of the late Judge Amy Karan and the continuous efforts of County Court Judge Carroll Kelly, Florida in general and Miami-Dade County in particular have been leaders in educating the Legislature, the courts, and the public regarding stalking, cyberstalking, and domestic violence.

13

No Florida case has held, nor do we, that the litigation privilege applies to conduct otherwise meeting the definitional requirements of stalking or cyberstalking—any more than the litigation privilege bars an action for a battery committed by one attorney against another in the course of a legal proceeding.[10]  A privilege against defamation claims is not a privilege to cause substantial emotional distress for "no legitimate purpose" or to threaten the safety of opposing counsel.

Ms. Raulerson's counsel argues that the trial court dismissed the petition on the basis of the litigation privilege.  We find nothing in the hearing transcript to support that contention.  Because the issue was addressed in the parties' memoranda below and their briefs here, we have considered, and now reject, the argument that the petition was barred in its entirety by the litigation privilege.

III.  Mr. Font's Motion for Attorney's Fees

Mr. Font filed a motion for appellate attorney's fees and costs.  The motion is denied.  The motion was made pursuant to Florida Rule of Appellate Procedure 9.400 "and this Court's inherent authority."  Rule 9.400 is "a vehicle for requesting appellate fees, but does not provide independent authority for granting attorney's

---

[10]  We recognize broad language in Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So. 2d 380, 384 (Fla. 2007), to the effect that the privilege may apply to other forms of misconduct during the course of a judicial proceeding, including tortious and statutory causes of action.  That holding recognized that the privilege or immunity must, however, have some relation to the proceeding.  Id. at 385 (citing Levin).

14

fees." Lewis v. Lewis, 689 So. 2d 1271, 1273 (Fla. 1st DCA 1997). See also, Garcia v. Collazo, 178 So. 3d 429 (Fla. 3d DCA 2015).

Nor does an unelaborated allusion to this Court's "inherent authority" or the allegedly "frivolous" petition suffice to support such a motion. And finally, motions for costs are filed in the lower tribunal, not in an appellate court. Fla. R. App. P. 9.400(a); Superior Protection, Inc. v. Martinez, 930 So. 2d 859, 860 (Fla. 2d DCA 2006).

The motion for appellate attorney's fees and costs is denied.

IV.    Conclusion

The Court shares the trial court's sympathy for both (a) Ms. Raulerson's difficult and stressful position as an employee of BLO—a law firm in a truly acrimonious dispute over insurance claims and the defense of accusations amounting to insurance fraud—and (b) her verified allegations regarding Mr. Font, such as crude comments, a possible drone, wasted time under subpoena, and threats of Bar proceedings or criminal charges for her or her law firm's conduct. The trial court's assessment that "if those things were said to you, then you were the victim of bullying at the very least," is completely accurate.

BLO and Mr. Barnard, clearly frustrated by Mr. Font's "filing of motions typically exceeding 500 pages in length," and "filing the defamatory affidavit in over a dozen cases," resorted to prose long on diagnosis and short on particular

facts, in drafting the petition.[11]  And many of the acts alleged in the petition would, if true, obligate the attorney making the allegations to report the acts to The Florida Bar.  See Rules Regulating The Florida Bar 4-8.3, "Reporting professional misconduct."

It is also true that an attorney relatively new to the practice of law and high-conflict litigation (though the very term, when used as a reference to conduct between counsel rather than parties, is inimical to professional practice) should develop a "thick skin,"[12] but such an attorney is also entitled to refer improper conduct by opposing counsel to the Bar and, in a particular case, to the presiding judge.  The trial court was correct that these would be a forum for determination of "a lot of what you would like me to decide based on your pleadings."

For these reasons, we affirm the trial court's order of dismissal.

---

[11]  "Mr. Font's invective has been 'brewing' and escalating since then to an alarming level, consistent with behavior exhibited by narcissistic psychopaths who cannot stand to lose 'control.'  From a big picture, Mr. Font's conduct relates to frustrated power and control over [Ms. Raulerson], cases being handled by [BLO], and his own wounded narcissistic ego."

[12]  See Before the Bar, Student Lawyer, In Brief: Developing a thick skin, ABA For Law Students (Oct. 1, 2013), https://abaforlawstudents.com/2013/10/01/brief-developing-thick-skin/, (last visited June 21, 2018).