547 So.2d 985 (1989)
Graham M. SCHORB, Appellant/Cross-Appellee,
v.
Sandra L. SCHORB, Appellee/Cross-Appellant.
No. 88-01669.
District Court of Appeal of Florida, Second District.
August 4, 1989.
*986 Edwin Peck, St. Petersburg, for appellant/cross-appellee.
Candace S. Whitaker and Christopher C. Ferguson of Riden & Earle, St. Petersburg, for appellee/cross-appellant.
ALTENBERND, Judge.
Both Graham Schorb and Sandra Schorb appeal from a final judgment of dissolution. The husband raises six issues on appeal, and the wife raises a single issue on cross-appeal. We affirm the cross-appeal and also affirm three issues raised by the husband. Two issues raised by the husband, however, require a remand to the lower court and a third issue, although moot, warrants discussion.
This couple married in 1958. Shortly thereafter, the husband joined the City of St. Petersburg Police Department, where he worked until his retirement on November 9, 1979. The wife also worked during the entire marriage. The couple raised four children, who were adults by the time of the divorce.
When the husband retired in 1979, he began receiving a monthly pension of $950. He became enamored with an old West, mountaineering life style. He left his wife in Florida for long periods of time and spent much of his time in Colorado. Believing that the banking system in the United States was unstable, the husband literally buried approximately $200,000 in gold, silver, and cash in the ground in three separate locations. It was perhaps prudent that Mr. Schorb declined to identify the location of his three caches except to state that they were someplace in the state of Colorado.
In addition to cash assets, the parties owned an unmortgaged home in St. Petersburg which was worth at least $60,000. Each also owned a one-third interest in real property located in Frostproof, Florida, which had a total assessed value of $47,390.
In the final judgment, the trial court directed that the home in St. Petersburg be sold and its proceeds equally divided between the parties. Additionally, the husband was ordered to pay lump sum alimony to the wife in the amount of $60,000. The court awarded the wife a one-half interest in the husband's retirement and entered an income-deduction order pursuant to section 61.1301, Florida Statutes (1987), requiring the police department to pay one-half of the pension directly to the wife. Finally, the court ordered the husband to pay the wife's attorneys' fees and costs in the amount of $8,017.
At the conclusion of the final hearing in this divorce, the lower court entered a writ of ne exeat ordering Mr. Schorb to post bond in the sum of $60,000 to assure that he would obey the court's judgment. Mr. Schorb was not authorized to leave the state without leave of court, and leave was not given. Since Mr. Schorb's liquid assets were buried in the mountains of Colorado, he found it impossible to post the required bond and, thus, spent several days confined in the Pinellas County Jail. Ultimately, Mr. Schorb quitclaimed and assigned his Florida property to his wife, as well as granting his wife a security interest in his *987 truck, and he was released from the county jail.
First, Mr. Schorb argues that the lower court had no authority to issue an income-deduction order to the police department under section 61.1301, Florida Statutes (1987). He argues that such orders are appropriate only to enforce support payments for a child, and not to enforce an award which is either equitable distribution or alimony.
Upon initial examination, the statute authorizing income deductions would appear to apply to alimony. The statute states:
Upon the entry of an order establishing, enforcing, or modifying an alimony or a child support obligation, the court shall enter a separate order for income deduction if one has not been entered. Copies of the orders shall be served on the obligee and obligor. If the support order directs that support payments be made through the depository, the court shall provide a copy of the support order to the depository... .
§ 61.1301(1)(a), Fla. Stat. (1987).
The definitional section of the statute provides that an "obligor" is "a person responsible for making support payments pursuant to an alimony or child support order." § 61.046(9), Fla. Stat. (1987). The definitional section of chapter 61 does not contain a definition for the term "support" as it applies to section 61.1301(1)(a), Florida Statutes (1987). Mr. Schorb argues that the word "support" in the definition of "obligor" and elsewhere in the statute is a limitation and, thus, not all alimony payments are subject to income deduction. He argues that "support payments" only include payments to protect children.
The definition of "obligor" for purposes of chapter 61 was created by chapter 86-220, section 113, Laws of Florida. In the same enactment, the legislature created a program for enforcement of child support. Ch. 86-220, §§ 140-42, Laws of Fla. For purposes of these enforcement provisions, "support" is defined to mean:
Support for a child and spouse or former spouse who is living with the child or children, but only if a support obligation has been established for that spouse and the child support obligation is being enforced under Title IV-D of the Social Security Act.
§ 409.2554(10)(a), Fla. Stat. (Supp. 1986).
It is apparent that both the provisions in chapter 61 and the provisions in chapter 409 were added in response to federal requirements. See Staff of Fla. H. Comm. on Judiciary, HB 1313 (1985) Staff Analysis 1, (rev. April 18, 1986) (available at Fla. Dept. of State, Div. of Archives, ser. 19, carton 1493, Tallahassee, Fla.); 42 U.S.C. § 666(a)(1) (1985). Both statutory provisions were enacted primarily to protect child support payments. There is no clear legislative intent concerning alimony to a spouse whose children are grown.
Statutes arising out of the same act should be read in pari materia. Major v. State, 180 So.2d 335 (Fla. 1965). Statutes which relate to the same subject matter should typically receive compatible interpretations. Fla. Jai Alai, Inc. v. Lake Howell Water & Reclamation Dist., 274 So.2d 522 (Fla. 1973); Cordrey v. Cordrey, 206 So.2d 234 (Fla. 2d DCA), appeal dismissed, 214 So.2d 617 (Fla. 1968). Especially when statutes employ exactly the same words or phrases, the legislature is assumed to intend the same meaning. Goldstein v. Acme Concrete Corp., 103 So.2d 202 (Fla. 1958). See also Medical Center Hosp. v. Bowen, 811 F.2d 1448 (11th Cir.1987) (there is a presumption that the same words used in different parts of an act have the same meaning). We see no valid reason to employ a definition of "support" in section 61.1301, Florida Statutes (1987), which varies from the definition in section 409.2554(10), Florida Statutes (1987).
Accordingly, we hold that section 61.1301, Florida Statutes (1987), should be used by trial courts only to enforce orders which provide support to a child or to a former spouse living with a child. Since the order entered by the lower court does not involve a child, it must be vacated by the trial court on remand.
*988 We recognize that chapter 61 must be liberally construed to protect the spouse from possible harm. § 61.001, Fla. Stat. (1987). Dissolution proceedings are proceedings in chancery. The trial court has broad equitable powers and statutory authority to enforce orders awarding equitable distribution or alimony. § 61.08-61.12, Fla. Stat. (1987); see, e.g., Bacardi v. White, 463 So.2d 218 (Fla. 1985) (spendthrift trust may be garnished in limited circumstances to enforce alimony decree); see also Fla. Nat'l Bank v. McCarthy, (Fla. 2d DCA 1989) 547 So.2d 1239. Thus, on remand, the trial court may require Mr. Schorb to establish the necessary bank accounts and to give the necessary instructions to the police department to accomplish the desired result. See City of Miami v. Spurrier, 320 So.2d 397 (Fla. 3d DCA 1975), cert. denied, 334 So.2d 604 (Fla. 1976). The trial court simply cannot use section 61.1301, Florida Statutes (1987), to accomplish the result.
Second, Mr. Schorb contends that the trial court should not have issued the writ of ne exeat. While we have some reservations concerning the propriety of that extreme remedy in this case, the issue is now moot. The writ was issued at the conclusion of the final hearing on February 3, 1988. Mr. Schorb spent the next several days in jail, but an order was filed on February 8, 1988, dissolving the writ of ne exeat in exchange for quitclaims, assignments, and pledges of Mr. Schorb's interest in the family home, the Frostproof property, his pickup truck, and a portion of his police pension. Because the writ has been dissolved and because we approve the order requiring security in lieu of the writ, the issue is now moot.[1]
Despite the mootness of the issue, we take this opportunity to emphasize the caution which trial courts should employ in choosing this remedy. The trial court is authorized to issue a writ of ne exeat or an injunction in a dissolution proceeding when a "party is about to remove himself or his property out of the state, or fraudulently convey or conceal it." § 61.11, Fla. Stat. (1987). The writ is based upon the inherent jurisdiction of a court of equity to prevent a person from leaving the jurisdiction until security is given for the party's appearance or the party's performance of a decree. State v. Browne, 105 Fla. 631, 142 So. 247 (1932). In this case, Mr. Schorb had voiced some stubborn recalcitrance concerning his legal duties toward his wife. He had, however, appeared for the final hearing and had generally cooperated with the judicial system in this divorce. He had been a law enforcement officer for twenty years, and the record does not contain proof that he had abandoned his respect for the law. One hopes that Mr. Schorb did not spend several days in jail due to an over-exuberant exercise of his first amendment right.
The trial court had an opportunity to see Mr. Schorb and listen to his testimony. We will not second-guess that court's discretionary decision that Mr. Schorb was likely to evade compliance with court orders in the absence of some legal compulsion. In this case, however, Mr. Schorb had real property and a pension within the reach of the trial court.[2] Those assets appear sufficient to protect the wife's judgment. In light of these Florida assets, it may not have been essential for the trial court to imprison Mr. Schorb in the absence of a cash bond.[3] While the trial court has *989 discretion to utilize the writ of ne exeat, it should only be used when less onerous remedies will not suffice.
Being contrary to the absolute right of free locomotion as taught by the common law, the use of a writ of ne exeat was once done away with by Magna Carta, except in times of war, and even now this writ, like all other special writs issued by a court of equity in the exercise of equitable jurisdiction, should be sparingly used and cannot be granted without regard to the relative mischiefs that the refusal or allowance of such writ would bring upon the respective parties... . Excessive or unreasonable bail should never be required; as the writ is a purely civil writ, it should not be allowed to be used oppressively or in unnecessary violation of the defendant's constitutional right to personal freedom to go and come as he may please.
Browne, 142 So. at 250 (citations omitted). See also Hagen v. Viney, 124 Fla. 747, 169 So. 391 (1936).
Finally, Mr. Schorb correctly argues that the trial judge failed to include specific findings as to the appropriate hourly rate and the number of hours reasonably expended in support of the wife's award of attorneys' fees. We conclude that the trial court did not err in requiring the husband to pay the wife's attorneys' fees. On remand, however, the trial court must enter an amended order containing the findings required by Fla. Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985); Woodruff & Sons, Inc. v. Pary, Inc., 543 So.2d 467 (Fla. 2d DCA 1989); Maas v. Maas, 541 So.2d 160 (Fla. 2d DCA 1989).
LEHAN, A.C.J., and PARKER, J., concur.
NOTES
[1] Had Mr. Schorb wished to challenge his imprisonment, it would have been necessary for him to file a petition for habeas corpus in the lower court or a petition for common law certiorari in this court. Bronk v. State, 43 Fla. 461, 31 So. 248 (1901); Mausdley v. Navarro, 510 So.2d 1079 (Fla. 4th DCA 1987).
[2] The fact that Mr. Schorb unsuccessfully contested the trial court's jurisdiction over the pension in a companion appeal supports the trial court's decision to use a writ of ne exeat.
[3] In this case, the requirement of a bond under the writ of ne exeat placed Mr. Schorb in a "Catch 22." He could not excavate his cash from the side of a Colorado mountain without leaving Florida, and he was required to stay in a Florida jail until he could dig up the cash. In fairness to the trial court, we observe that the risk of imprisonment was first discussed at a hearing on January 20, 1988. The trial court may have concluded that Mr. Schorb had adequate time in the two weeks preceding the final hearing to travel to Colorado and engage in a little prospecting.