Kuntz, J.
The Former Wife appeals the circuit court’s order denying proceedings supplementary against Ellen Spector, the New Wife of the Former Husband. The Former Wife argues the court erred in finding homestead property and insurance policies are always exempt from the contempt powers of the court regardless of fraud. We agree that the court erred in its con *258 clusion and reverse the order denying proceedings supplementary.
Background
In 1996, the circuit court rendered a final judgment of dissolution of marriage and incorporated post-nuptial agreement. The former couple agreed that the Former Husband would pay the Former Wife $5,000 per month in alimony until his or her death, or until she remarried, that he would transfer to her title and interest in the marital house via quitclaim deed, and that he would maintain whole or term life insurance for her benefit in the amount of $750,000.
Four years later, the Former Husband sought to modify the amount of alimony he owed, a request that the court rejected and labeled “somewhat disingenuous” because he had failed to pay anything to the Former Wife. At that time, the court found the Former Husband in civil contempt for “willful and deliberate failure to comply with the alimony provisions” of their post-nuptial agreement. The court established the alimony arrearages through December 31, 2000 to be $128,024, and ordered the Former Husband to pay a purge amount of $64,012 within thirty days. The court also awarded the Former Wife $100,000 in attorneys’ fees and costs.
Months later, the Former Husband filed for bankruptcy. The bankruptcy court rejected his petition, finding his alimony ar-rearages were not subject to bankruptcy discharge, and awarded the Former Wife over $3,000 in attorneys’ fees. The bankruptcy court’s judgment was recorded as a lien on the Former Husband’s property with the Broward County Clerk of Court.
Before he sought to modify the alimony, the Former Husband married the New Wife. After he remarried, and after he had been held in contempt, he transferred his residence via quitclaim deed from title in his name alone to himself and the New Wife as tenants-in-common. A second mortgage was taken on that house; however, the money was used for “remodeling,” not to satisfy the Former Husband’s obligations to the Former Wife.
At some point not clear from the record, the Former Husband also transferred title in a life insurance policy to the New Wife. The New Wife then borrowed against the entire value of the $200,000 policy. Her candid testimony indicates shielding money from the Former Wife was the purpose of the transfer. The New Wife testified that she “took out the money ’cause my husband and his lawyer were speaking about he would have to give his ex-wife some kind of money .... So we didn’t have extra money so I took out the money for that ...” The record indicates none of the Former Husband’s obligations to the Former Wife were satisfied with this money.
Upon learning of these transfers, and still having not received what the court had determined to be owed to her, the Former Wife moved for proceedings supplementary to execution and to implead the New Wife and the insurance company. The court issued an order for proceedings supplementary and later held an evidentia-ry hearing.
After the evidentiary hearing, the court rendered an order concluding that both the life insurance policy and real property were protected from creditors prior to the transfers. Further, the court accepted the New Wife’s argument that “because the assets were completely protected from creditors prior to the transfer, the mere transfer of that asset would have no effect on the creditor.” Therefore, the court concluded that “as a matter of law, the transfer was not fraudulent.”
Analysis
We review the court’s legal conclusions regarding the application of home *259 stead protections de novo. Partridge v. Partridge, 912 So.2d 649, 649 (Fla. 4th DCA 2005).
Florida’s constitutional and statutory homestead protections are robust. With regard to the real property, the protection is found in the Florida Constitution which provides that “[tjhere shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon ... the following property owned by a natural person ... (1) a homestead .... ” Art. X, § 4(a)(1), Fla. Const.
Generally, this homestead protection can only be breached in limited situations:
1) government entities with a tax lien or assessment on the property;
2) banks or other lenders with a mortgage on the property which originated from the purchase of the property; and
3) creditors with liens on the property which originated from work or repair performed on the property.
Art. X, § 4(a), Fla. Const.
The Former Wife argues that a fourth exception, alimony creditors, has long been recognized. We agree. See, e.g., Anderson v. Anderson, 44 So.2d 652 (Fla. 1950); Wilbur v. Wilbur, 981 So.2d 1252 (Fla. 2d DCA 2008); Partridge, 912 So.2d at 649; Siegel v. Siegel, 700 So.2d 414 (Fla. 4th DCA 1997); Gepfrich v. Gepfrich, 582 So.2d 743 (Fla. 4th DCA 1991).
The exception relating to alimony creditors is founded upon our supreme court’s conclusion more than one hundred years ago that the homestead protections “should not be so applied as to make it an instrument of fraud or imposition upon creditors.” Pasco v. Harley, 73 Fla. 819, 75 So. 30, 32 (1917) (citations omitted). Even earlier, the court held “that the provisions of the homestead laws should be carried out in the liberal and beneficent spirit in which they were enacted, but care should be taken at the same time to prevent them from becoming the instruments of fraud.” Drucker v. Rosenstein, 19 Fla. 191, 199 (1882). Building on that understanding of the homestead protections, in Anderson the court held that the homestead exemption cannot “be construed to enable the husband to claim its benefit against the very persons , to whom he owes the obligation of support and maintenance, and that to construe the statute otherwise, would, at least in part, defeat its avowed object.” 44 So.2d at 655.
The broad holding in Anderson has’ since, been clarified and the forced sale of homestead property is permitted when the former spouse claiming the homestead protection acted egregiously, reprehensible or fraudulently. Partridge, 912 So.2d at 649. In those cases, we have unambiguously .held that the circuit court has “the legal authority to foreclose the lien.” Id. at 650. We have also affirmed a court’s refusal to recognize the homestead exemption when the former spouse “attempt[s] to use the homestead exemption law as an instrument to defraud his former wife and to escape his honest debt to her.” Gepfrich, 582 So.2d at 744. Thus, based on our controlling case law, the homestead protection does not shield a former spouse when he or she acts egregiously, reprehensibly, or fraudulently.
A similar result is required with regard to other exemptions. In Siegel; we held that an “IRA is not a safe haven where a former spouse can hoard assets while, at the same time, argue that he does not have the present ability to pay a purge amount in a contempt order arising from the nonpayment of obligations due under [Chapter 61].” 700 So.2d at 415. In that case, we explained that “because a person can ob *260 tain access to funds in an IRA account, a trial court may properly look to that- account as a source of funds to satisfy a purge amount in a contempt order.” Id.
As with the IRA account in Siegel, in this case the Circuit court may properly look to the insurance policy. The protection for the insurance policy is statutory, not constitutional. See § 222.14, Fla. Stat. (2015). However, the statutory protection is not absolute. Section 222.29, Florida Statutes (2015), removes -the statutory protection if the exemption results from - a fraudulent transfer or conveyance as provided in chapter 726. Similarly, section 222.30, Florida Statutes (2015), removes property from the statutory exemption if a conversion by the debtor resulted in the property becoming exempt. The law is clear that the exemptions clearly do -not apply when they are being used for a fraudulent purpose. -
Based upon the exceptions to the homestead protection found in the cases cited above, and upon the statutory exceptions to the insurance exemptions, we find the trial court erred in its conclusion that the real property and insurance policy could not be reached under any circumstance;
The Former Wife also urges us to find that these transfers amounted to fraud. The invitation is enticing for a number of reasons, two of which we note. First, the Former Husband testified that the assets he transferred to the New Wife were his largest assets and constituted the only assets to which the Former Wife could ever look in order to collect her , alimony. Second, the New Wife testified that these transfers occurred “’cause my husband and his lawyer were speaking about he would have to give his ex-mfe some kind ofmoney.”
■Even though the conclusion seems clear and reaching this conclusion would preserve the court’s limited resources, it 4s a conclusion we decline to reach in the first instance. See State Farm Mut. Auto Ins. Co. v. Lawrence, 65 So.3d 52, 56 (Fla. 2d DOA 2011). Therefore, on remand the circuit court shall conduct appropriate proceedings and make findings , regarding whether the Former Husband “acted either egregiously, reprehensibly, or fraudulently so as to justify a forced sale of the homestead.” Partridge v. Partridge, 790 So.2d 1280, 1284 (Fla. 4th DCA 2001). If the court finds such behavior, the court shall exercise its authority-over the real property and insurance policy and may force a sale,
Conclusion
The court erred in its conclusion that the transfer of the real property and insurance policy could not be fraudulent as a matter of law due to constitutional and statutory exemptions. - We reverse the court’s order denying proceedings supplementary and remand with instructions to conduct appropriate proceedings in order to determine if the Former Husband acted either egregiously, reprehensibly, or fraudulently so as to justify a forced sale of the protected property.,

Reversed md remanded mth instructions.

Ciklin, C.J., and Gross, J., concur.