DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ALAN LEBOU CARNER,**
Appellant,

v.

**SARA J. SINGER** and **THE LAW OFFICES OF SARA J. SINGER, P.A.,**
Appellees.

No. 4D2025-0467

[June 10, 2026]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael A. Robinson, Judge; L.T. Case No. 062023CA019250AXXXCE.

Ralph Oliver Anderson of Ralph O. Anderson, P.A., Fort Lauderdale, for appellant.

Scott A. Cole and Francesca M. Stein of Cole, Scott & Kissane, P.A., Miami, for appellees.

LOTT, J.

Former Wife filed a motion to enforce payment of child support and alimony arrearages against Former Husband. Former Wife also filed a lis pendens on Former Husband's home based on the pending enforcement proceeding. Former Husband filed a civil action against Former Wife's attorneys for damages stemming from the lis pendens. The trial court dismissed Former Husband's action. Former Husband now appeals.

The question presented in this appeal is whether Former Wife was allowed to file a lis pendens on Former Husband's home based on the pending enforcement proceeding.

The answer is no.

Taking the allegations in the operative complaint as true—as the trial court was required to do—the lis pendens was improper. Thus, we hold the trial court erred in dismissing Former Husband's second amended complaint.

## I. BACKGROUND[1]

### A. The Family Enforcement Proceedings

Alan Carner ("Former Husband") and Nicole Carner ("Former Wife") married on February 2, 2008. On February 25, 2013, Former Husband filed a petition for dissolution of marriage.

The parties entered into a mediated marital settlement agreement, and the dissolution court entered a final judgment on April 29, 2015, incorporating that agreement.

After Former Husband failed to make child-support and alimony payments, Former Wife, on December 15, 2021, filed a motion for contempt against Former Husband, seeking enforcement of the settlement agreement.

The motion requested that the court "enforce the provisions of the Final Judgment," find Former Husband "in willful contempt of the Marital Settlement Agreement," order Former Husband to "immediately pay" the child support and alimony owed, and jail Former Husband if he failed to pay a purge amount.

### B. The Lis Pendens

Former Wife was not Former Husband's only dissatisfied creditor.

On March 15, 2021, Former Husband's mortgage servicer initiated foreclosure proceedings on Former Husband's residence. As part of discussions with the servicer, on August 11, 2022, Former Husband listed the residence for sale at $2,497,000 and sought refinance offers to satisfy the mortgage and end the foreclosure proceeding.

Four days later, on August 15, 2022, Former Wife filed and recorded a notice of lis pendens against the residence. The lis pendens stated:

---

[1] "A motion to dismiss tests the legal sufficiency of the complaint and does not determine factual issues. All allegations of the complaint must be taken as true and all reasonable inferences drawn therefrom must be construed in favor of the non-moving party." *Haddad v. Lyft Fla., Inc.*, 2026 WL 1309854, at *2 (Fla. 4th DCA May 13, 2026) (citations and quotations omitted).

YOU ARE HEREBY NOTIFIED of the institution of this action and of the pendency of a dissolution of marriage action bearing the case number as shown in the above caption, filed in the Circuit Court of the 17th Judicial Circuit, in and for Broward County, Florida, by the Former Wife, NICOLE CARNER, against the Former Husband, ALAN CARNER. The Former Wife is seeking certain legal and equitable relief against the Former Husband related to the subject marital real property described below:

The lis pendens then included the property's legal description. Former Wife then noticed the listing agent for the property of the lis pendens.

On February 1, 2023, Former Husband filed a motion to dissolve lis pendens. Before any hearing on the motion, Former Wife filed a release of lis pendens. The remainder of those dissolution proceedings are not the subject of this appeal.

Former Husband's residence sold for $1,650,000 on January 10, 2024—$847,000 less than the listing price prior to Former Wife filing the lis pendens.

### C. **Former Husband's Civil Lawsuit**

On October 4, 2023, Former Husband filed a civil tort action against Former Wife and her attorneys, Sara J. Singer and The Law Offices of Sara J. Singer, P.A. (Former Wife's attorneys, collectively "Appellees"), asserting claims for slander of title, abuse of process, malicious prosecution, and civil conspiracy.

The substance of the claims was that the lis pendens filed against his property was wrongful and that the wrongfully filed lis pendens caused damages when Former Husband eventually sold his home at a substantially lower price than the price at which the home was originally listed.

### D. **Proceedings Below**

Appellees moved to dismiss the complaint. In substance, Appellees argued: (1) section 61.11, Florida Statutes (2022), authorized the filing of the notice of lis pendens; and (2) Appellees enjoy the litigation privilege, which precludes any liability under Florida law. The trial court granted several of their motions to dismiss with leave to amend the complaint before finally dismissing the complaint with prejudice.

3

This appeal ensued.

## II. ANALYSIS[2]

### A. Lis Pendens Law

"The term 'lis pendens' literally implies a pending suit.  It is defined as the jurisdiction, power, or control which courts acquire over property involved in a pending suit."  *Med. Facilities Dev., Inc. v. Little Arch Creek Properties, Inc.*, 675 So. 2d 915, 917 (Fla. 1996) (cleaned up).

"The purpose of a lis pendens as authorized by this statute is to notify prospective purchasers and encumbrancers that any interest acquired by them in the property in litigation is subject to the decree of the court.  It is simply a notice of pending litigation."  *Procacci v. Zacco*, 402 So. 2d 425, 427 (Fla. 4th DCA 1981) (quotations omitted).  A lis pendens indicates to prospective purchasers of property that they are "acquiring an interest in property that is a subject of litigation [and] are bound by, or entitled to the benefit of, a subsequent judgment."  *U.S. Bancorp v. Taharra Assets 5545, Inc.*, 378 So. 3d 630, 634 (Fla. 4th DCA 2024) (cleaned up).  Thus, "[a] lis pendens serves two main purposes: (1) to give notice to and thereby protect any future purchasers or encumbrancers of the property; and (2) to protect the plaintiff from intervening liens."  *Townsend v. C.T. Box*, 291 So. 3d 114, 117 (Fla. 4th DCA 2020) (quoting *Jallali v. Knightsbridge Vill. Homeowners Ass'n, Inc.*, 211 So. 3d 216, 218 (Fla. 4th DCA 2017)).

The lis pendens doctrine originates from the civil law, but took root in common law, and first was adopted as part of this country's law in Chancellor Kent's opinion in *Murray v. Ballou*, 1 Johns. Ch. 566, 1815 WL 1189 (N.Y. Ch. 1815).  *De Pass v. Chitty*, 105 So. 148, 149 (Fla. 1925).  Under common law, the world was deemed to be constructively noticed immediately upon commencement of suit, but from early on, many states began materially modifying this principle by statute.  *Id.*  Florida, for example, in 1920, enacted section 2853, Florida Statutes, which provided:

> No suit at law or in equity shall operate as a lis pendens as to any property involved therein until there shall have been filed in the office of the clerk of the circuit court of the county where the property is situated, and shall have been recorded by him

---

[2] "The standard of review of an order granting a motion to dismiss is de novo." *Haddad*, 2026 WL 1309854, at *3 (citation omitted).

4

in a book to be kept by him for the purpose, a notice of the institution of such suit, containing the names of the parties, the time of the institution of the suit, the name of the court in which it is pending, a description of the property involved, and a statement of the relief sought as to such property.

§ 2853, Rev. Gen. Fla. Stat. (1920); *De Pass*, 105 So. at 149.

Now, notices of lis pendens are statutorily authorized under section 48.23, Florida Statutes (2022). Specifically, section 48.23(1)(a) provides:

An action in any of the state or federal courts in this state operates as a lis pendens on any real or personal property involved therein or to be affected thereby only if a notice of lis pendens is recorded in the official records of the county where the property is located and such notice has not expired pursuant to subsection (2) or been withdrawn or discharged.

§ 48.23(1)(a), Fla. Stat. (2022). Section 48.23(1)(b)1. provides:

An action that is filed for specific performance or that is not based on a duly recorded instrument has no effect, except as between the parties to the proceeding, on the title to, or on any lien upon, the real or personal property unless a notice of lis pendens has been recorded and has not expired or been withdrawn or discharged.

§ 48.23(1)(b)1., Fla. Stat. (2022). And section 48.23(3) provides:

When the pending pleading does not show that the action is founded on a duly recorded instrument or on a lien claimed . . . or when the action no longer affects the subject property, the court shall control and discharge the recorded notice of lis pendens as the court would grant and dissolve injunctions.

§ 48.23(3), Fla. Stat. (2022).

A lis pendens is a serious matter to the subject property owner. Unsurprisingly, an open lis pendens will generally prevent the property holder from selling or mortgaging the property. *Med. Facilities Dev., Inc.*, 675 So. 2d at 917 (citation omitted). "A lis pendens places a cloud on the

5

title that did not previously exist." *DeGuzman v. Balsini*, 930 So. 2d 752, 754 (Fla. 5th DCA 2006).

It follows that a lis pendens cannot be filed in every litigation against a property owner. Its use is appropriate only where the dispute is sufficiently connected to the property at issue. Put differently, the lis pendens must be based on a "fair nexus between the property and the dispute." *Med. Facilities Dev., Inc.*, 675 So. 2d at 917 (citation omitted). "To this end, the trial court need not determine whether there is any likelihood the property will be alienated or subjected to intervening liens during the pendency of the cause." *Chiusolo v. Kennedy*, 614 So. 2d 491, 492 (Fla. 1993). "The relevant question is whether alienation of the property or the imposition of intervening liens, if either actually occurred, conceivably could disserve the purposes for which lis pendens exists." *Id.* "Where the answer is yes, fair nexus must be found." *Id.* Further, "establish[ing] a fair nexus requires a showing of a good faith, viable claim." *Martell v. Dubner*, 885 So. 2d 469, 471 (Fla. 4th DCA 2004) (quotation omitted).[3]

The Third District has stated this a bit more cleanly: "When a plaintiff can be afforded complete relief on a claim without reference to the title to the real property, a lis pendens cannot be maintained." *Blue Star Palms, LLC v. LED Tr., LLC*, 128 So. 3d 36, 39 (Fla. 3d DCA 2012) (citing *Beefy King Int'l Inc. v. Veigle*, 464 F.2d 1102, 1104 (5th Cir. 1972) ("Under the Florida cases a lis pendens is proper only when the required relief might specifically affect the property in question.")).

A typical civil action seeks money damages. If the plaintiff obtains a judgment, that judgment may eventually be reduced to a lien against the judgment-debtor's real property in proceedings under Chapter 56, Florida Statutes. But the underlying civil lawsuit has no nexus to a particular piece of the defendant's property and does not purport to affect the title to any such property.

Thus, courts have also repeatedly recognized that "[w]hen the primary purpose of a lawsuit is to recover money damages and the action does not

---

[3] This is as true for claims grounded in equitable liens as any other claim against the property. *See Delta Aggregate, LLC v. Hermes Hialeah Warehouse, LLC*, 266 So. 3d 248, 249 (Fla. 4th DCA 2019) ("While a claim for an equitable lien can support a lis pendens, it must be founded either upon a duly recorded instrument or a fair nexus between the apparent legal or equitable ownership of the property and the dispute embodied in the lawsuit.").

directly affect the title to or the right of possession of real property, the filing of a notice of lis pendens is not authorized." *Sheehan v. Reinhardt ex rel. Estate of Warren*, 988 So. 2d 1289, 1291 (Fla. 2d DCA 2008) (quoting *DeGuzman*, 930 So. 2d at 755). "A notice of lis pendens is properly filed when a person seeks to enforce any lien upon designated real estate, but a lien which may result after a judgment provides no basis for the filing of a lis pendens notice." *DeGuzman*, 930 So. 2d at 755. "A lis pendens is not an appropriate instrument for use in promoting recoveries in actions for money judgments." *Id.; see also Ness Racquet Club, LLC v. Renzi Holdings, Inc.*, 959 So. 2d 758, 761 (Fla. 3d DCA 2007) ("It is well settled that in the absence of a duly recorded instrument, where there is no direct claim cognizable under the law against or upon the property burdened by the lis pendens, no lis pendens may be asserted under any conditions against the realty." (cleaned up)); *Trujillo v. Garcia*, 402 So. 3d 422, 424 (Fla. 3d DCA 2024) ("The complaint does not allege that Trujillo has any type of ownership in or lien on Garcia's property. The litigation would not affect the title in any manner. There was no nexus between the two. This is simply a lawsuit for damages—indeed, damages to Trujillo's property. The notice of lis pendens was improper."); *Sunrise Point, Inc. v. Foss*, 373 So. 2d 438, 439 (Fla. 3d DCA 1979) ("[T]he complaint sought only money damages and relief in the nature of a . . . prejudgment attachment. It did Not [*sic*] allege a direct claim cognizable under the law against or upon the remaining property burdened by the lis pendens. Hence, . . . no lis pendens may be asserted under any conditions against the realty involved in this case.").

A lis pendens proponent should be confident that they are in accord with these principles before filing. A proponent files an improper lis pendens at their peril and may subject themselves to a tort action for damages caused by filing a wrongful lis pendens against a property owner. For example, we have long recognized the tort of slander of title: the "wrongful, intentional and malicious disparagement of vendibility of title to real property." *Atkinson v. Fundaro*, 400 So. 2d 1324, 1326 (Fla. 4th DCA 1981) (recognizing such claim where lis pendens was wrongfully filed against plaintiff's property).

### B. Former Wife Could Not File a Lis Pendens Based on the Pendency of This Family Law Enforcement Proceeding

Appellees argue their lis pendens was proper.[4]

_____

[4] The parties did not address, and so we do not decide, whether any of the four counts in Former Husband's second amended complaint validly state any claim upon which relief can be granted. Instead, the parties more generally address

We disagree. It was not.

Appellees argue in particular that section 61.11(1), Florida Statutes, means that Former Wife could potentially foreclose on the house if she were to prevail in her enforcement proceeding. That section provides:

> When either party is about to remove himself or herself or his or her property out of the state, or fraudulently convey or conceal it, the court may award a ne exeat or injunction against the party or the property and make such orders as will secure alimony or support to the party who should receive it.

§ 61.11(1), Fla. Stat. (2022).

But here, section 61.11, on its face, is inapplicable to the house. The statute only operates "[w]hen either party is about to remove himself or herself or his or her property out of the state, or fraudulently convey or conceal it." § 61.11(1), Fla. Stat. (2022).

"The writ of ne exeat is a writ in common use in equity. The authority to issue the writ is primarily based upon the inherent jurisdiction of a court of equity to prevent a person from leaving the jurisdiction until he gives security for his appearance or performance of a decree." *State v. Browne*, 142 So. 247, 250 (Fla. 1932). It is "primarily a personal writ and intended to enable the court to retain jurisdiction over the defendant." *Id.* "The manifest purpose of such writ, as its name indicated, is one of restraint to maintain the presence of the defendant within the state, for the purpose of securing the practical application of legal process." *Pan Am. Sur. Co. v. Walterson*, 44 So. 2d 94, 96 (Fla. 1950).

"[N]either the statute nor case law authorizes utilizing this writ independently, as a substitute for a contempt, injunction, or other enforcement order, where its purpose is not to prevent a party from fleeing or removing assets but, rather, to force the party to post security, or produce assets, that would be used to satisfy a judgment." *Siravo v. Siravo*, 670 So. 2d 983, 985 (Fla. 4th DCA 1996). The writ is generally unavailable where the movant cannot show "why civil or criminal contempt or other remedies are not more appropriate to secure those ends." *Id.*; *accord Schorb v. Schorb*, 547 So. 2d 985, 988–89 (Fla. 2d DCA 1989)

---

the two issues raised in Appellees' motion below: whether the lis pendens was proper, and whether the litigation privilege applies.

("While the trial court has discretion to utilize the writ of ne exeat, it should only be used when less onerous remedies will not suffice."), *disapproved of on other grounds, Coleman v. Coleman*, 629 So. 2d 103 (Fla. 1993).

Here, Appellees never plausibly suggested that Former Husband was about to remove himself or the house out of the state, or that he was about to fraudulently convey or conceal the house. Rather, Former Husband was listing the house on the open market through a realtor—nothing fraudulent or surreptitious. *Cf. White v. White*, 429 So. 2d 730, 732 (Fla. 1st DCA 1983) (holding "the trial court erred in ordering a lien placed on husband's property to secure periodic alimony payments in the absence of evidence that husband intends to fraudulently convey or conceal assets").

Even if Former Wife had concerns about what Former Husband might do with the sale *proceeds* after closing, those concerns did not authorize a pre-sale lis pendens clouding title to the house. By contrast, in *Parnama v. Parnama*, 908 So. 2d 541, 542 (Fla. 4th DCA 2005), we approved the use of a section 61.11 injunction to require the wife to deposit part of the *proceeds* of a home sale into a trust account upon the sale's completion, where the wife had previously sold property without his knowledge. A lis pendens was not an issue in that case, and ought not to have been an issue—the requested injunction did not purport to affect the title of the real property.

The bottom line is the house was property that could, one day, become subject to foreclosure or other relief by means of Former Wife's civil proceeding against Former Husband. A property not specifically the subject of an action, but that one day might be foreclosed on to satisfy a future judgment, is a textbook example of what **not** to subject to a lis pendens. The fact that the action is a family law enforcement proceeding for alimony and child support bears little on the inquiry.[5]

---

[5] As Appellees argue, Former Husband may not be entitled to the homestead protection in a support enforcement proceeding as he would be against other creditors. *See Anderson v. Anderson*, 44 So. 2d 652, 655 (Fla. 1950) (homestead exemption cannot "be construed to enable the husband to claim its benefit against the very persons to whom he owes the obligation of support and maintenance, . . . to construe the statute otherwise would, at least in part, defeat its avowed object" (internal citation and quotation marks omitted)); *Spector v. Spector*, 226 So. 3d 256, 259 (Fla. 4th DCA 2017) ("[B]ased on our controlling case law, the homestead protection does not shield a former spouse when he or she acts egregiously, reprehensibly, or fraudulently."). But that doesn't change anything about the availability of a lis pendens here. The same would be true whether the house were an investment property rather than a homestead.

Florida courts have repeatedly held as much in family cases.

In *Brown v. Brown*, 732 So. 2d 1169, 1171 (Fla. 1st DCA 1999), the court rejected an attempt to place a lis pendens on a home on a motion to enforce a settlement agreement and arrearages similar to the motion here. The court noted that, "while the appellant failed to make the full equity payment specified in the agreement, a lis pendens does not pertain upon a payment which is merely related to but which does not affect the alienability of the subject property." *Id.* The court went on—"the motion for enforcement and arrearages in the present case does not request relief with regard to the property itself, asking instead for compliance with the settlement agreement and an award of money damages. The notice of lis pendens thus should have been discharged." *Id.*

Likewise, in *DeGuzman*, the court held that "a lis pendens in this case should not have been filed because there is no connection between [Former Wife's] litigation to enforce and require payment of child support and the real property against which she filed the lis pendens." 930 So. 2d at 754–55. The court reasoned that "[s]he completely failed to show any grounds to assert equitable or legal title to the property, nor any connection to it other than as a potential source from which to recoup child support." *Id.* at 755.[6]

The Third District recently reached a similar result in *Golubtsova v. Budaev*, 418 So. 3d 329 (Fla. 3d DCA 2025). In a dispute between former spouses involving rental property purchased during the marriage, the former wife pleaded claims, including equitable lien and constructive trust, against the former husband, and filed a notice of lis pendens. The court looked to the substance of the complaint, concluding that it sought money damages—past rents—not relief affecting title to the property, and found: "Since this is simply a lawsuit for damages, there is no nexus 'between the apparent legal or equitable ownership of the property and the dispute embodied in the lawsuit.'" *Id.* at 331 (citing *Chiusolo*, 614 So. 2d at 492). The court noted that "the title of a count in a complaint is not controlling—we must look to the substance of what is being sought," and found that "[a]t its core, the complaint does not concern apparent legal or equitable

---

[6] Appellees argue that *DeGuzman* is distinguishable because it did not involve section 61.11. But why should it have? As explained above, section 61.11 is an extraordinary remedy rarely applied in routine enforcement proceedings. Section 61.11 is no more applicable here than it would have been in that closely analogous fact pattern.

ownership of the property . . . [and] does not affect the title of the property." *Golubtsova*, 418 So. 3d at 331. Thus, the court held, "[t]he notice of lis pendens filed in this lawsuit was improper." *Id.* (citing *Nu-Vision, LLC v. Corp. Convenience, Inc.*, 965 So. 2d 232, 234 (Fla. 5th DCA 2007) ("[E]stablishing a 'fair nexus' between a claim in litigation and the property's title requires a little more than simply pleading a theoretical nexus.")).

In sum, property that *might* eventually be subject to foreclosure to satisfy a judgment, even in a family case, without more, cannot be properly subjected to a lis pendens.

But that's what happened here. Appellees filed a lis pendens on Former Husband's home as part of enforcement proceedings to recover arrearages. Such property is not "involved" in the action, nor will it be "affected thereby" as contemplated by section 48.23, and the property's potential availability for future execution does not create the required nexus between the property and the litigation. § 48.23, Fla. Stat. (2022) (requiring "any real or personal property [be] *involved therein* or to be *affected thereby*" for an action to operate as a lis pendens) (emphasis added).

Former Wife could have been "afforded complete relief" on her enforcement action "without reference to the title to the real property," and thus "a lis pendens cannot be maintained." *Blue Star Palms*, 128 So. 3d at 39.

Taking the allegations in the second amended complaint in the light most favorable to Former Husband, the lis pendens filed by Appellees was improper. Accordingly, the trial court erred in granting the motion to dismiss on the ground that the lis pendens was proper.

### C. **The Litigation Privilege Does Not Provide Former Wife's Attorneys Immunity for the Filing of the Improper Lis Pendens**

Appellees alternatively argue that the litigation privilege bars Former Husband's claims because the lis pendens was filed in connection with post-dissolution litigation. We again disagree.

Florida's litigation privilege affords "absolute immunity" "to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding." *Levin, Middlebrooks,*

*Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994). "It is the perceived necessity for candid and unrestrained communications in those proceedings, free of the threat of legal actions predicated upon those communications, that is at the heart of the rule." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007). "Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct." *Id.* (quotation omitted).

However, a malicious prosecution action is not so privileged, because "the first element of a claim for malicious prosecution is that an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued." *Debrincat v. Fischer*, 217 So. 3d 68, 70 (Fla. 2017) (cleaned up). Thus, "[i]f the litigation privilege could apply to bar a malicious prosecution action, this would mean that the tort of malicious prosecution would be effectively abolished in Florida—or, at the very least, eviscerated beyond recognition." *Id.* (citation omitted).

Against this backdrop, Appellees argue that our precedent in *Procacci v. Zacco*, 402 So. 2d 425, 427 (Fla. 4th DCA 1981) holds that the filing of a lis pendens is subject to the litigation privilege.[7] But *Procacci* did not hold that. *Procacci* adopted the unremarkable rule from a majority of jurisdictions that "[a] notice of lis pendens, filed under the authority of a statute, is . . . as much entitled to the benefit of privilege, within contemplation of libel laws, as are the pleadings in the action to which the notice relates." *Id.* at 428 (citation omitted). In other words, the lis pendens' *content* is privileged to the same extent that the content of other litigation pleadings—complaints, motions, and the like—are privileged. Under the circumstances alleged here, and consistent with *Atkinson*, the litigation privilege does not warrant dismissal at the pleading stage of claims predicated on the allegedly wrongful filing of a lis pendens wholly lacking the required nexus to the property. 400 So. 2d 1324.

Our Supreme Court rejected the litigation privilege's application to malicious prosecution claims because an element of the tort is the act of wrongfully pursuing litigation. *Debrincat*, 217 So. 3d at 70. For similar reasons, the litigation privilege does not necessarily bar claims premised

---

[7] Appellees properly concede that the privilege is unavailable as to the malicious prosecution claim given *Debrincat*.

on the allegedly wrongful filing of a lis pendens where the asserted tort itself challenges the propriety of the recording.

And we have held as much for nearly as long as *Procacci* has existed. A few weeks later, in *Atkinson*, we rejected application of the privilege to a slander of title claim, noting that "the filing of the lis pendens was not privileged since it was neither a proper notice of lis pendens nor did it involve the property in litigation," adding a "*cf.*" citation to *Procacci. Atkinson*, 400 So. 2d at 1326; *accord Rubinstein v. Keshet Inter Vivos Tr.*, 2019 WL 2254715, at *3 (S.D. Fla. Mar. 5, 2019) ("This means that – if Plaintiffs intentionally filed a wrongful lis pendens – that conduct could fall outside the scope of the litigation privilege."); *Mendez v. U.S. Bank, Nat'l Ass'n*, 2017 WL 5634941, at *2 (S.D. Fla. Sept. 25, 2017) ("There are exceptions to this rule [i.e., application of the litigation privilege], however, particularly in factual scenarios where the legitimacy of the lis pendens itself is being challenged."); *Phillips v. Epic Aviation, LLC*, 234 F. Supp. 3d 1174, 1216 (M.D. Fla. 2017) ("In the current case, the filing of the Notice of Lis Pends [*sic*] fell outside the Florida litigation privilege. . . . The Property was not at issue, and would not have been impacted, except by future litigation asserting frivolous arguments.").

Accordingly, the litigation privilege cannot serve as a basis for the dismissal of Former Husband's second amended complaint to the extent the claims turn on, as an element, the wrongful act of filing the lis pendens.

## III.   **CONCLUSION**

Because, on these pleaded facts, the pending enforcement proceeding did not directly affect title to or possession of Former Husband's residence, and because section 61.11 did not authorize the notice of lis pendens, the lis pendens was improper. And to the extent the claims turn on the alleged wrongful filing of the lis pendens, the litigation privilege does not provide Appellees immunity from suit. Accordingly, we reverse the trial court's order dismissing Former Husband's second amended complaint with prejudice, and remand for further proceedings.[8]

*Reversed and remanded for further proceedings consistent with this opinion.*

---

[8] We do not pass on whether the second amended complaint otherwise states each asserted cause of action.

CIKLIN and GERBER, JJ., concur.

\* \* \*

***Not final until disposition of timely-filed motion for rehearing.***